1  JOHN WALSHE MURRAY (074823)
   ROBERT A. FRANKLIN (091653)
2  JENNY LYNN FOUNTAIN (226241)
   MURRAY & MURRAY
3  A Professional Corporation
   19400 Stevens Creek Blvd., Suite 200
4  Cupertino, CA 95014-2548
   Telephone: (650) 852-9000; (408) 907-9200
5  Facsimile: (650) 852-9244
   Email: jwmurray@murraylaw.com
6  Email: rfranklin@murraylaw.com
   Email: jlfountain@murraylaw.com
7

8  Attorneys for Debtor

9

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                     OAKLAND DIVISION

13 In re:                            )
                                     )  Case No. 11-48963-EDJ-11
14 **ANDRONICO'S MARKETS, INC.,**    )
   A California Corporation, aka     )        Chapter 11
15 Andronico's Community Markets,    )
                                     )  *[Date and time subject to entry of order*
16              Debtor.              )  *shortening time]*
                                     )  Date:     August 23, 2011
17        1200 Irving Street         )  Time:     10:00 a.m.
          San Francisco, CA 94122    )  Place:    United States Bankruptcy Court
18                                   )            1300 Clay Street, Courtroom 215
   Employer Tax I.D. No.: 94-1307395 )            Oakland, CA  94612
19                                   )  Judge:    Honorable Edward D. Jellen
                                     )
20

21        **MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY**
          **PREPETITION WAGES AND HONOR EMPLOYEE OBLIGATIONS**
22

23       Andronico's Markets, Inc., a California Corporation, the debtor and debtor in possession in

24 the above-captioned bankruptcy case (the "Debtor"), hereby submits this motion (the "Employee

25 Obligations Motion"), for an order (i) authorizing, but not requiring, the Debtor to pay accrued,

26 prepetition employee wages and expense reimbursements (collectively, the "Prepetition Wages");

27 (ii) authorizing, but not requiring, the Debtor to honor accrued Personal Time Off ("PTO") and to

28 allow its employees to use prepetition accrued PTO in the ordinary course; and (iii) requiring certain

Case: 11-48963   Doc# 6   Filed: 08/22/11   Entered: 08/22/11 22:23:05   Page 1 of 8

banks and other financial institutions, to the extent they are required to receive, process, honor, and pay checks presented for payment by the Debtor's employees, to comply with procedures and honor all funds transfer requests made by the Debtor relating thereto.

This Employee Obligations Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF EMERGENCY HEARING ON CERTAIN FIRST DAY MOTIONS, the DECLARATION OF WILLIAM J. ANDRONICO IN SUPPORT OF EMERGENCY MOTIONS (the "Emergency Motions Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Employee Obligations Motion.  By separate application, the Debtor requested a hearing on this matter on shortened notice to parties in interest.

## I.      JURISDICTION

1.      The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are §§ 105(a), [1] 363(b), 507(a)(4), 1107 and 1108 of the Bankruptcy Code.

## II.      HISTORY AND RELEVANT FACTS

**A.      History and Events Leading to the Debtor's Bankruptcy Case**

3.      A detailed discussion of the Debtor's history, description of its business, its assets and liabilities, and the events that led to its need for bankruptcy relief are set in the Emergency Motions Declaration.

**B.      The Bankruptcy Filing**

4.      On August 22, 2011, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 (the "Bankruptcy Case") of the Bankruptcy Code.  The Debtor is presently operating its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108.

5.      No official committee of unsecured creditors has been formed in the Bankruptcy Case

---

[1] Unless otherwise stated, all statutory references are to title 11 of the United States Code (the "Code" or the "Bankruptcy Code") unless otherwise specified herein.

Case: 11-48963   Doc# 6   Filed: 08/22/11   Entered: 08/22/11 22:23:05   Page 2 of 8

to date.

**C.      The Debtor's Chapter 11 Business Plan**

6.      In this Chapter 11 case, the Debtor plans to continue its operations so as to maintain its going concern value and maximize the value of its assets for the benefit of creditors.  In that regard, the Debtor further intends to file motions to approve bidding procedures and for approval of a sale of substantially all of the Debtor's assets to the Debtor's pre-petition secured lender or highest bidder.  To finance its operations pending the sale, the Debtor has agreed with its pre-petition secured lender on the use of cash collateral, a post-petition debtor-in-possession financing facility and a budget approved by the secured lender (the "Budget").[2]  The Budget was developed taking into account, among other things, the amounts of the Prepetition Wages and accrued PTO that are the subject of this Employee Obligations Motion.

**D.      The Company's Workforce.**

7.      The Company currently employs a total of 469 employees in its seven (7) Northern California stores, comprised of 27 at headquarters of which 25 are full time, and 442 at the store level of which 206 are full time.

8.      The Debtor anticipates that most, if not all, of its current employees will remain as full-time employees on an as-needed basis through the asset sale.  Subsequent to the sale, the Debtor is informed and believes that its secured lender will retain some, if not a large majority, of the employees if it is the successful purchaser.  Retention of the Company's employees is an integral component to the sale.

9.      The Company's workforce is critical to its business operations.  Each of the Company's employees is essential not only to the continued, uninterrupted operation of the business, but to effectuating the orderly administration of the Debtor's Bankruptcy Case.  The Company's employees have distinct experience and expertise that are vital to its operations.

10.      Amongst other things, the Company requires its management employees to execute

---

[2] The Debtor will be filing a "first day" motion requesting the Court's entry of interim and final orders approving the use of cash collateral of, and the terms and conditions of the Debtor's secured financing facility to be extended by, the Debtor's secured lender.  Concurrently herewith, the Debtor will apply to the Court to have such motion heard on shortened time on August 24, 2011 or as soon thereafter as the Court's calendar permits.

the development, maintenance, communications, accounting, marketing and customer service functions associated with its operations.  The Company also requires its employees at its seven (7) locations to continue to provide services to customers to maintain the going concern value of the assets pending the sale, and ensure a seamless transition to the buyer of the assets.  Failure to maintain relationships with customers and suppliers will open the door to competitors and will eliminate revenue and growth.  As a result, the Company's business will lose its going concern value, and its assets, including its customer relations, will be harmed.

11.     As discussed in the Emergency Motions Declaration, because of financial constraints, the Debtor downsized its management team last year.  It is therefore even more critical that the remaining employees continue functioning at their positions.

12.     The Company's payroll department is located in its San Francisco headquarters office, but its payroll is processed by Automatic Data Processing, Inc. ("<u>ADP</u>").

**E.     Prepetition Wages and Expenses**

13.     All employees, including those covered under a collective bargaining agreement, are paid weekly (for services performed Sunday to Saturday).  Typically, the Debtor submits its payroll to ADP on Monday.  ADP withdraws the funds from Andronico's payroll account via two payments: 1) the first one on Tuesday for payroll, and 2) the second on Wednesday for payroll taxes and garnishments.  ADP then pays the payroll and payroll taxes on Thursday.  As of the Petition Date, the employees have been paid through Saturday, August 13, 2011.  The Debtor requests authorization to fund on Tuesday or Wednesday of this week the payroll related to Sunday, August 14, 2011 to Saturday, August 20, 2011.  Hours worked on Sunday, August 21, 2011 are also prepetition claims, and through this Employee Obligations Motion, the Debtor seeks authorization to pay those wages as well.  However, wages for August 21, 2011 will be funded as part of the normal post-petition funding scheduled for Tuesday (August 30, 2011) and Wednesday (August 31, 2011), which will be a normal payroll cycle for the payroll department.

14.     The Debtor's secured lender has indicated that it will consent to the Debtor's use of cash collateral to fund payroll for the week of August 14, 2011 through August 20, 2011, subject to the Court's entry of an interim order authorizing the use of cash collateral and debtor-in-possession

MOTION FOR ORDER AUTHORIZING DEBTOR TO PAY PREPETITION WAGES AND HONOR EMPLOYEE OBLIGATIONS

financing and thereafter as authorized in the Budget.

15.     The Debtor believes that the aggregate amount of the Prepetition Wages earned within the 180-day period before the Petition Date is approximately $425,000.  The Debtor does not believe that any individual employee is owed more than $11,725.00 in Prepetition Wages.  If applicable, any amount owed above the statutory priority limit of $11,725.00 will not be paid, but will instead be treated as a general unsecured claim in the Bankruptcy Case.[3]  The Company will pay all postpetition employee wages in the ordinary course.

16.     The Company customarily reimburses its employees for business expenses incurred in performing their duties such as for travel, meals, mileage, and telephone use.  The Debtor believes there are employees who have not submitted outstanding prepetition expense reimbursement claims, totaling approximately $5,000.  In addition, the Debtor believes that there may be other employees that may not have submitted all claims timely.  The Debtor seeks authority to pay such pre-petition business expenses in the ordinary course and to honor outstanding checks related thereto, if any.

17.     In accordance with the request to pay the Prepetition Wages, the Debtor requests that the Court authorize and require applicable banks and other financial institutions to receive, process, honor, and pay all checks presented for payment by each employee and to honor all fund transfer requests made by the Company relating to the foregoing employee obligations.

**F.     Prepetition PTO**

18.     In the ordinary course, the Company provides allotted PTO days (consisting of accrued vacation, sick time, and floating holiday time) to its employees.  The Debtor requests authority to continue to honor PTO earned by current employees and to allow such employees to use prepetition accrued PTO in the ordinary course of business.

19.     PTO accrues at 120-200 hours per year with a maximum accrual of one (1) times the employee's annual vacation hours allowed. Through the Petition Date, the Company's employees have accrued an aggregate of approximately 39,000 hours of PTO which amounts to approximately to $817,717.66 in value of which $544,073.05 was earned within the 180-day period before the

---

[3] Section 507(a)(4) provides that an employee is entitled to priority to the extent of $11,725 earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for wages, salaries, or commission, including vacation, severance, and sick leave pay earned by an individual.

Petition Date.

20.    The Company does not intend to "cash out" PTO benefits to current employees at this time but only intends to honor such benefits by allowing employees to use PTO in the ordinary course.  The Debtor does not believe that any current employee has accrued PTO within 180 days of the bankruptcy filing which exceeds in amount the $11,725.00 limit established by § 507(a)(4).[4]

21.    In the event of a post-petition termination, if applicable, employees will be entitled to an aggregate prepetition priority claim up to $11,725.00, earned within 180 days of the bankruptcy filing, with the balance being a general unsecured claim.

### III.    MEMORANDUM OF POINTS AND AUTHORITIES

22.    A debtor is authorized to use property of the estate other than in the ordinary course of business pursuant to section 363(b)(1) of the Bankruptcy Code.  The bankruptcy court has discretion regarding section 363(b) motions requesting use, sale or lease of property of the estate outside the ordinary course of business.  *See In re North Brand Partners*, 200 B.R. 653, 656 (9th Cir. BAP 1996).  The debtor is required to show that a sound business purpose justifies the use, sale or lease of property of the estate under section 363(b)(1).  *See, e.g.*, *Stephens Indus., Inc., v. McClung*, 789 F.2d. 386, 389-90 (6th Cir. 1986); *Committee of Equity Sec. v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d. 1063, 1071 (2d Cir. 1983); *In re Lady H Coal Co., Inc.*, 193 B.R. 233, 243 (Bankr. S.D. W. Va. 1996); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-176 (D. Del. 1991).

23.    The debtor has the burden of demonstrating a valid use, sale or lease of property of the estate outside the ordinary course of business.  *See In re Lionel Corp.*, 722 F.2d. at 1070-71. After the debtor has articulated a rational business judgment, a presumption exists that the business decision was made on an informed basis, in good faith, and in the honest belief that the action was in the best interest of the Debtor.  *See, e.g.*, *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc., (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*citing Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  A party who objects to the use, sale or lease of the estate

---

[4] However, when combined with the Prepetition Wages, the Debtor believes that two (2) employees may exceed the limit set forth by § 507(a)(4).  In any event, by this Employee Obligations Motion, the Debtor seeks authority only to honor, and not to cash out, vacation and PTO in the ordinary course.

Case: 11-48963   Doc# 6   Filed: 08/22/11   Entered: 08/22/11 22:23:05   Page 6 of 8

1  property must produce evidence supporting its objection.  *See, e.g.*, *In re Montgomery Ward Holding*

2  *Corp.* 242 B.R. 147, 155 (Bankr. D. Del. 1999) (*citations omitted*).

3       24.    It is generally recognized that the continuation of a stable employee base and

4  harmonious employee relations in operating a chapter 11 case is critical to a successful

5  reorganization.  As the court noted in *In re Chateauguay Corporation*, "[e]mployee good will and

6  contentment is an asset which is vital to the continuation of a debtor's business operations and its

7  ability to effectively reorganize during the Chapter 11 process."  *In re Chateauguay Corporation*

8  116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (*citations omitted*).

9       25.    Here, the Debtor believes that its failure to satisfy and honor outstanding obligations

10  to its employees will create concern and discontent among its employees, and adversely affect the

11  employees' esprit de corps.  Moreover, it will undermine the Debtor's ability to retain its employees.

12  If the Debtor cannot promptly assure its employees that their wages and expenses will be paid and

13  that their accrued PTO will be honored during the Bankruptcy Case, immediate and irreparable harm

14  may result due to the employees' relocating or resigning prior to the consummation of the sale.  The

15  Debtor's ability to pay employee wages and honor accrued PTO is integral to maintaining continuity

16  and order to the Debtor's business activities through the retention of its employees.  At this critical

17  state, the Debtor cannot risk a significant disruption in its operations caused by low employee morale

18  and the loss of key employees.  The Debtor's remaining employees have unique experience and

19  expertise which are vital to the Debtor's operations.

20       26.    The Debtor believes that through the use of cash collateral and debtor-in-possession

21  financing as set forth in the Budget, it will have sufficient operating cash to satisfy its obligations to

22  employees, including the Prepetition Wages and expenses as well as postpetition wages, as they

23  come due in the ordinary course of the Debtor's business.  In addition, the Debtor submits that the

24  relevant time periods for which payment is requested fall within the 180 days prior of the Petition

25  Date as required by section 507(a)(4).  As its employees are necessary to maintain the value of the

26  Debtor as a going concern, the Debtor believes that the relief requested herein is modest in light of

27  the perceived benefit to the bankruptcy estate.  Permitting the Debtor to satisfy its obligations to its

28  employees by paying the Prepetition Wages (including expense reimbursements) and honoring

Case: 11-48963   Doc# 6   Filed: 08/22/11   Entered: 08/22/11 22:23:05   Page 7 of 8

1  accrued PTO, is grounded on sound business judgment consistent with sections 363, 1107 and 1108

2  of the Bankruptcy Code.

3         27.     To further maintain the continuity and preserve the morale of the Debtor's

4  employees, and to maintain the viability of the Debtor's business pending the Sale and subsequent

5  consummation of a successful reorganization, the Debtor respectfully requests that this Court grant

6  the relief requested herein.

7         28.     No previous request for relief sought in this Employee Obligations Motion has been

8  made to this or any other court.

9         **WHEREFORE**, the Debtor respectfully requests that the Court enter its Order:

10        1.      Granting the Debtor's Employee Obligations Motion;

11        2.      Authorizing the Debtor, in its sole discretion, to pay outstanding Prepetition Wages

12 (including expenses) and to honor, but not cash out, PTO accrued by its employees up to a maximum

13 of $11,725.00 per employee;

14        3.      Authorizing the Debtor, in its sole discretion, to allow its employees to use

15 prepetition accrued PTO in the ordinary course;

16        4.      Authorizing and requiring applicable banks and other financial institutions to receive,

17 process, honor, and pay all checks presented for payment by each employee and to honor all fund

18 transfer requests made by the Debtor relating to the foregoing employee obligations; and

19        6.      For such other relief as this Court deems just and proper.

20 Dated:  August 22, 2011                    **MURRAY & MURRAY**
                                             A Professional Corporation

21

22                                           By:  */s/ Robert A. Franklin*
                                                  Robert A. Franklin
23                                                Attorneys for Debtor

24

25

26

27

28

Case: 11-48963   Doc# 6   Filed: 08/22/11   Entered: 08/22/11 22:23:05   Page 8 of 8