JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
JENNY LYNN FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

In re:

**ANDRONICO'S MARKETS, INC.,**
A California Corporation, aka
Andronico's Community Markets,

Debtor.

1200 Irving Street
San Francisco, CA 94122

Employer Tax I.D. No.: 94-1307395

Case No. 11-48963-EDJ-11

Chapter 11

Date: August 24, 2011
Time: 10:00 a.m.
Place: United States Bankruptcy Court
1300 Clay Street, Courtroom 215
Oakland, CA 94612
Judge: Honorable Edward D. Jellen

**MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY; AND (5) GRANTING RELATED RELIEF**

Andronico's Markets Inc., a California corporation, the debtor and debtor in possession herein, ("Andronico's," the "Debtor" or the "Company"), hereby submits its MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY; AND (5) GRANTING RELATED RELIEF (the "Motion") in which it moves, pursuant to Sections 363 and 364 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 9014-1 of the Bankruptcy Local Rules, for entry of interim and final orders approving the use of cash collateral

of, and the terms and conditions of the Debtor's secured financing facility to be extended by, the Debtor's senior secured creditor, RENWOOD ANDRONICO LENDING 1, LLC, a Delaware limited liability company (the "Lender").[1]

The Motion will be made on the grounds that such borrowings and use of cash collateral are necessary to fund the Debtor's operations and Chapter 11 administrative expenses pending the sale of substantially all of the Debtor's assets to the Lender as stalking horse bidder pursuant to a motion to be filed approving such sale under Bankruptcy Code § 363 and that the entities with an interest in such cash collateral are or will be adequately protected under the terms of the proposed order granting the Motion. The Motion is based on the Memorandum of Points and Authorities set forth herein, the DECLARATION OF WILLIAM J. ANDRONICO IN SUPPORT OF EMERGENCY MOTIONS and the SUPPLEMENTAL DECLARATION OF WILLIAM J. ANDRONICO IN SUPPORT OF FIRST DAY MOTIONS AND APPLICATIONS (collectively the "Andronico Declarations")[2] filed herein, the CERTIFICATE OF COMPLIANCE WITH CASH COLLATERAL AND FINANCING MOTIONS & STIPULATIONS submitted herewith, the pleadings and papers on file herein, and on such other oral or documentary evidence as may be submitted at the hearing before the Court.

In support of the Motion, the Debtor respectfully represents the following:

## I.     JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is §§ 363, 364 and 503(b)(1) of the Bankruptcy Code.

/ / /

/ / /

---

[1] Renwood Andronico Lending 1, LLC is owned by Renwood Opportunities Fund 1, LLC and Renovo-Andronico's, LLC.

[2] In addition to this Motion, the Debtor is concurrently filing other "first day" motions, including motions pursuant to which the Debtor is seeking authority to establish a procedure to deem its utilities adequately assured of payment under Section 366 of the Code, authority to reject a burdensome real property lease and authority to pay certain other pre-petition claims.

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx    2    MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963    Doc# 23    Filed: 08/23/11    Entered: 08/23/11 22:19:48    Page 2 of 15

## II.     BANKRUPTCY RULE 4001 CONCISE STATEMENT[3]

**A.     Relief Requested**

3.     Prior to the filing of the case, the Debtor met its working capital needs through a secured credit facility originally extended by the Bank of the West ("BOW") to the Debtor (the "BOW Pre-Petition Credit Facility").  In addition, prior to the filing of the case, the Debtor and Special Situations Investing, Inc. ("SSI") entered into a term loan (the "SSI Pre-Petition Loan" and together with the BOW Pre-Petition Credit Facility, the "Pre-Petition Secured Loans") pursuant to which SSI loaned the amount of $20 million to the Debtor.  On August 19, 2011, the Lender acquired all of the Pre-Petition Secured Loans (the "Loan Acquisition") and is now willing to provide to the Debtor up to $5.0 million in a DIP credit facility (the "DIP Facility") to the extent necessary and to consent to the use of cash collateral in accordance with that certain written DEBTOR-IN-POSSESSION CREDIT AGREEMENT (the "DIP Credit Agreement"), a copy of which in substantially the form[4] attached as **Exhibit "A"** to the CERTIFICATE OF COMPLIANCE WITH CASH COLLATERAL AND FINANCING MOTIONS & STIPULATIONS (the "Certificate") and filed concurrently herewith, which will fund continuing operations pursuant to a budget (the "Budget") prepared by the Debtor and in substantially the same form as attached as **Exhibit "A"** hereto.

4.     The Debtor requests entry of an order or orders (a) approving the use of cash collateral and post-petition secured financing for the weeks ending August 26, 2011, September 3, 2011 and September 10, 2011 (the "Interim Period") pending the conclusion of a final hearing on this Motion (assuming a final hearing is held on or before September 9, 2011) to the extent necessary to avoid immediate and irreparable injury, (b) scheduling a final hearing on the Motion for a date on or before September 9, 2011, and (c) at the final hearing, approving post-petition secured financing and use of cash collateral through the close of a sale of substantially all of the Debtor's assets (the "Cash Collateral Period") to be filed herein.

/ / /

---

[3] Pursuant to the Court's Guidelines for Cash Collateral and Financing Motions & Stipulations (the "Guidelines") the Debtor has also filed concurrently herewith its Certificate of Compliance with the Guidelines.

[4] The DIP Credit Agreement has not yet been finalized.  The parties anticipate that an agreement will be reached prior to the hearing.

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx     3     MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963   Doc# 23   Filed: 08/23/11   Entered: 08/23/11 22:19:48   Page 3 of 15

**B. Proposed Use of Cash Collateral and Post-Petition Financing**

5. The use of cash collateral is necessary to fund continuing operations, pay employees, generate further inventory and thereby maintain the going concern value of the Debtor's business, pending the contemplated sale of substantially all of the Debtor's assets to the Lender. The Debtor requests interim approval for use of cash collateral in the amounts of and for the purposes described under the line items and time periods set forth in the Budget to the extent necessary to prevent immediate and irreparable harm to the Estate, pending a final hearing on this Motion. Thereafter, the Debtor proposes to continue to use cash collateral as described in the Budget. In addition, the Lender has agreed to advance additional amounts (the "Post-Petition Advances") to the extent necessary to supplement funding required for the Debtor's operations at the interest rate of 10%. The amount of Post-Petition Advances is anticipated to be up to $2.6 million for the Interim Period.

**C. Adequate Protection**

6. The Debtor anticipates that the DIP Credit Agreement will provide, and the Debtor further requests pursuant to §§ 364(c)(2) and (3), that as security for the Post-Petition Advances, the Debtor be allowed to grant to the Lender a lien (the "DIP Facility Lien") on all property of the Debtor, but excluding (i) any retainers paid or deposited before the Petition Date by Borrower to or with its professionals for professional services and expense reimbursement in connection with the Bankruptcy Case, except to the extent those retainers are not exhausted, as more fully set forth in the DIP Credit Agreement, and (ii) avoidance actions or the proceeds thereof and claims for relief arising under the Bankruptcy Code (including claims arising under §§ 506(c), 544, 545, 547, 548, and 549 thereof). The DIP Facility Lien shall be subordinate to a carve-out for: (i) compensation and expense reimbursement (including professional fees and expenses to the extent allowed in the Guidelines allowed to a trustee in any successor Chapter 7 case; (ii) fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (iii) fees and expenses of the Debtor's professionals and any counsel that is appointed to represent any committee of unsecured creditors in this case (the "Carve-Out").

7. As additional adequate protection to secure the Post-Petition Advances and to secure any decrease in the value of the property securing the Lender's Pre-Petition Obligations as a result of

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx   4   MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963   Doc# 23   Filed: 08/23/11   Entered: 08/23/11 22:19:48   Page 4 of 15

the use of cash collateral, the Debtor requests pursuant to §§ 361(2) and 364(c)(1) that the Lender be granted, to the extent of the amounts advanced and the net decrease, a superpriority claim under section 507(b) of the Bankruptcy Code (the "<u>Superpriority Claim</u>"), and the Superpriority Claim shall have priority in payment over any and all administrative expense claims of any kind under the Bankruptcy Code subject to the Carve-Out.

8. As adequate protection for the Pre-Petition Obligations, interest shall accrue under the Pre-Petition Loan Documents (defined below) at the non-default rate provided therein. As additional adequate protection and to secure any decrease in the value of the property securing the Lender's prepetition claims resulting from the use of cash collateral by the Debtor, the Debtor be allowed to grant to the Lender a replacement lien (the "<u>Replacement Lien</u>" and together with the DIP Facility Lien, the "<u>Adequate Protection Obligations</u>") on all property of the Debtor acquired after the commencement of this case of the same types and description as the collateral securing the Lender's prepetition lien. The Replacement Lien shall be (i) junior and subject to the DIP Facility Liens and (ii) junior and subject to all other liens thereon. The Replacement Lien shall in all cases be subject to the Carve-Out. In addition, the Debtor has agreed to comply with the reporting requirements as set forth in the Credit Agreement.

**D.  Events of Default**

9. The DIP Credit Agreement and the proposed Interim Order provide for the events of default customarily agreed to in certain circumstances, including, but not limited to the following: (i) attempts to prime the Lender's DIP Credit Facility, (ii) the appointment of a trustee, receiver or examiner, (iii) the conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, (iv) the dismissal of the Bankruptcy Case by the Bankruptcy Court, and (v) failure by the Debtor to meet any of certain milestones set forth in the DIP Credit Agreement.

**E.  Notice of This Motion and the Hearing.**

10. Copies of this Motion and the related papers were served upon the following parties: (1) the Lender; (2) counsel to the Lender; (3) the Debtor's twenty largest unsecured creditors; (4) the United States Trustee; (4) and all parties who have requested special notice. After the preliminary hearing, the Debtor will give notice of any subsequent hearing in the manner as ordered by the

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx    5    MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963   Doc# 23   Filed: 08/23/11   Entered: 08/23/11 22:19:49   Page 5 of 15

Court.

### III. MOTION

**A. The Bankruptcy Petition**

11. On August 22, 2011, (the "Petition Date"), the Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code. The Debtor is presently operating its business as a debtor in possession pursuant to the provisions of §§ 1107 and 1108 of the Bankruptcy Code.

12. No official committee of unsecured creditors (the "Committee") has been appointed in the bankruptcy case to date.

**B. History and Events Leading to the Debtor's Bankruptcy Case**

    i) **History and Corporate Structure of the Debtor**

13. Andronico's is a leading independent, specialty supermarket operator in the San Francisco Bay Area. Founded in 1929, the Company operates seven stores in prime upscale urban and suburban locations in Berkeley (four stores), San Francisco, Los Altos, and San Anselmo. These areas possess demographics that are closely aligned with the Company's target customer who typically values Andronico's premium offerings, emphasis on freshness and quality, vast selection, excellent customer service, and one-stop shopping capabilities. Ranging in size from 11,000 to 23,000 square feet of selling space, the Company's stores are designed to offer the finest possible shopping experience. In addition to a full selection of everyday grocery items at competitive prices, Andronico's offers a wide variety of specialty items, including goods produced both locally and around the world, natural and organic alternatives, and a premier, restaurant-quality takeout meals department. The Company enjoys strong brand awareness throughout the Bay Area. In addition, Andronico's is highly involved in each of the communities that it serves, and this commitment has helped drive long-term customer loyalty.

14. The Debtor is a California C-corporation, wholly owned by Solano Enterprise LLC, a California limited liability company. The ownership of Solano Enterprise LLC is divided among various Andronico family members. In February 2007, SSI was issued warrants to purchase up to 25% of the Class A common stock of the Company in conjunction with providing the Debtor with a

Case: 11-48963    Doc# 23    Filed: 08/23/11    Entered: 08/23/11 22:19:48    Page 6 of 15

$20 million subordinated credit facility. The warrants vested annually over seven years, and as of February 2011 approximately 57% of the warrants had vested (representing 16% of total Class A shares outstanding). On August 19, 2011, SSI surrendered all shares and warrants to the Debtor as part of the Loan Acquisition.

      ii)  **The Debtor's Operations**

  15.  Andronico's currently employs a total of 469 employees, comprised of 27 at headquarters of which 25 are full time, and 442 at the store level of which 206 are full time. Fifty-two of the Company's employees are not represented by a union. The Company's store labor force is unionized and part of the United Food and Commercial Workers Union. The collective bargaining agreement between the union and the Company expires in October 2011. The Company is also a party to seven non-residential real property leases and numerous equipment leases.

**C.  Events Leading to the Filing of the Petition**

  16.  Following an ill-fated expansion strategy in the early 2000s when Andronico's opened three new locations, the Company closed all three of the new stores in 2006 after investing nearly $44 million into the projects. During the most recent economic downturn triggered by the financial meltdown in 2008, Andronico's suffered from a decline in sales, erosion of margins, and a hindered balance sheet. These challenges led the Company in 2010 to recruit and hire a new executive team, comprised of experienced industry veterans who previously held leadership positions at Whole Foods Market and Safeway, and who were attracted to Andronico's significant brand equity and potential. Unfortunately, the new leadership was unable to turn the Company around and embark on a growth strategy, which precipitated additional changes and a down-sizing of the management team. The team presently consists of chief executive officer William J. Andronico, a 35-year Company veteran, and Justin Jackson, executive vice-president of operations.

  17.  After substantial declines in sales during fiscal years 2008 and 2009, annual sales have stabilized over the past two fiscal years in the $115 million to $120 million range with gross margins in the range of 38% to 42%. The management team has also significantly reduced expenses, most notably corporate overhead, and closed its Palo Alto location which operated at a loss.

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx   7   MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963  Doc# 23  Filed: 08/23/11  Entered: 08/23/11 22:19:49  Page 7 of 15

1         18.     The Company's recent financial performance is summarized below

| $MMs/FYE July | Actual 2007 | Actual 2008 | Actual 2009 | Actual 2010 | Actual YTD July 2, 2011 (1) |
|---|---|---|---|---|---|
| **Sales** | $ 154.0 | $ 149.6 | $ 137.2 | $ 121.5 | $ 108.4 |
| **Gross Margin** | 64.6 | 63.3 | 59.0 | 49.7 | 44.4 |
| *% of Sales* | *41.9%* | *42.3%* | *43.0%* | *40.9%* | *41.0%* |
| **EBITDA** | 9.1 | 7.2 | 8.2 | 2.2 | (0.4) |
| *% of Sales* | *5.9%* | *4.8%* | *5.9%* | *1.8%* | *-0.4%* |
| Adjustments | - | - | - | 1.0 | 1.0 |
| **Adj. EBITDA** | 9.1 | 7.2 | 8.2 | 3.3 | 0.6 |
| *% of Sales* | *5.9%* | *4.8%* | *5.9%* | *2.7%* | *0.5%* |
| **Net Income** | 3.8 | 1.7 | 1.8 | (3.5) | (5.4) |
| *% of Sales* | *2.5%* | *1.1%* | *1.3%* | *-2.9%* | *-5.0%* |

(1) Results for fiscal year through period 12 of 13.

### D.    The Debtor's Chapter 11 Business Plan

19.     On October 29, 2010, the Debtor retained the services of Bailey, Elizondo & Brinkman LLC ("<u>BEBLLC</u>") to serve as its financial and restructuring advisor to assist it in evaluating restructuring alternatives, negotiating with its lenders, and canvassing the marketplace for potential investors or buyers. From February 2011 through June 2011, BEBLLC identified 46 prospective candidates, and received executed, non-disclosure agreements from 25 of them and letters of intent from 3.

20.     There are presently 3 parties who may be interested in acquiring the assets of the Company. The Debtor intends to conduct an auction of its assets as a single lot, and to assume and assign those real property and equipment leases that are critical to the ongoing business operation.

### E.    Assets and Debt Structure

21.     As of the Petition Date, the Debtor had $300,000 in cash. As of July 30, 2011, the net inventory value was $4,365,111.40 and other assets, collectively aggregating, subject to yearend adjustments, approximately $24,353,883 in total assets. In addition to the amounts owed under the Pre-Petition Credit Facilities and secured by all of the Debtor's assets, the Debtor's liabilities consist

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx    8    MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963   Doc# 23   Filed: 08/23/11   Entered: 08/23/11 22:19:49   Page 8 of 15

of accounts payable, accrued liabilities and other obligations aggregate $8,900,000.  The Company anticipates claims under the Perishable Agricultural Commodities Act ("PACA") of approximately $581,000, and § 503(b)(9) claims of approximately $1,905,000.

22. Recent searches of the records of the California Secretary of State disclose the following liens and security interests on the following pre-petition property under the search name Andronicos Markets, Inc.:

| NAME | FILING NUMBER | ORIGINAL DATE OF FILING | COLLATERAL COVERAGE |
|---|---|---|---|
| Dell Financial Services | 0113460440 | May 8, 2001 | Specific Equipment |
| CIT Group | 0207060318 | March 8, 2002 | Specific Equipment |
| CIT Group | 0215060564 | May 30, 2002 | Specific Equipment |
| American Bank Note Company | 0325260082 | September 5, 2003 | Consigned Goods |
| Pawnee Leasing Corporation | 067091634208 | November 13, 2006 | Specific Equipment |
| First Federal Leasing | 067092983488 | November 20, 2006 | Specific Equipment |
| Bank of the West | 077103126128 | February 14, 2007 | All of Debtor's Assets |
| Special Situations Investments, Inc. | 077103238051 | February 15, 2007 | All of Debtor's Assets |
| Special Situations Investments, Inc. | 077104044532 | February 23, 2004 | All of Debtor's Assets |
| US Bancorp | 077115057031 | May 24, 2007 | Specific Equipment |
| US Bancorp | 087152399660 | April 1, 2008 | Specific Equipment |
| US Bancorp | 087160647140 | June 6, 2006 | Specific Equipment |

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx    9    MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963    Doc# 23    Filed: 08/23/11    Entered: 08/23/11 22:19:48    Page 9 of 15

| NAME | FILING NUMBER | ORIGINAL DATE OF FILING | COLLATERAL COVERAGE |
|---|---|---|---|
| US Bancorp | 097184804819 | January 15, 2009 | Specific Equipment |
| Dell Financial Services, LLC | 097185398424 | January 22, 2009 | Specific Equipment |
| US Bancorp | 107232064055 | May 17, 2010 | Specific Equipment |

**F.  Necessity For Use Of Cash Collateral and DIP Financing**

23.  The Debtor has prepared a 13-week rolling Budget as a cash operating budget reflecting the anticipated receipt of revenues and operating expenses of the Debtor during the Chapter 11 period prior to the confirmation of a plan of reorganization.  The ability of the Debtor to obtain sufficient working capital and liquidity through the use of cash collateral and secured post-petition financing is vital to the preservation and maintenance of the going concern value of the Debtor.

24.  The emergency interim relief requested is critical to the success of this case.  As set forth in the Budget, the Debtor anticipates that it will require up to $2.6 million to fund necessary expenses during the first three (3) weeks following the Petition Date.  These expenses include payroll (of which the Debtor is also seeking to pay the approximate aggregate amount of $420,000 in wages that accrued prior to the Petition Date), utility deposits, and payments and advance deposits to vendors for inventory and supplies.

**G.  The Pre-Petition Secured Indebtedness**

   **i)  The BOW Pre-Petition Credit Facility**

25.  On February 14, 2007, the Debtor entered into a CREDIT AGREEMENT (together with all amendments and forbearance agreements, the "<u>BOW Loan Documents</u>") with BOW, pursuant to which BOW provided a revolving credit facility commitment with a termination date of February 14, 2012.  The BOW Pre-Petition Loan Documents also included the issuance by BOW of letters of credit in the aggregate amount of $345,000 to certain of the Debtor's vendors.  The outstanding balance under the BOW Loan Documents as of August 19, 2011 is $7,721,315.55, consisting of

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx   10   MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963   Doc# 23   Filed: 08/23/11   Entered: 08/23/11 22:19:49   Page 10 of 15

principal of $7,359,756.10, accrued interest of $16,559.45 and contingent liability for issued letters of credit of $345,000.00, plus fee and expense reimbursement obligations of approximately $172,000 (collectively, the "<u>BOW Pre-Petition Obligations</u>").

26. The BOW Pre-Petition Obligations are secured by a blanket security interest in all of the personal property of the Debtor. Interest is accruing at the non-default rate of 4.5%.

        ii) **The SSI Pre-Petition Loan**

27. On February 14, 2007, the Debtor entered into a SECOND LIEN CREDIT AGREEMENT (together with all amendments and forbearance agreements, the "<u>SSI Loan Documents</u>" and together with the BOW Loan Documents, the "<u>Pre-Petition Loan Documents</u>") with SSI pursuant to which SSI loaned the amount of $20,000,000 to the Debtor, with payment of principal and interest due and payable on February 14, 2014. The outstanding balance under the SSI Loan Documents as of August 19, 2011 is $21,665,618.70, consisting of principal of $20,000,000, accrued interest of $1,665,618.70 plus fee and expense reimbursement obligations of approximately $25,000 (collectively, the "<u>SSI Pre-Petition Obligations</u>").

28. The SSI Pre-Petition Obligations are also secured by a blanket security interest in all assets of the Debtor.

**H.    The Debtor's Chapter 11 Business Plan**

29. In its Chapter 11 case, the Debtor contemplates that it will continue its operations so as to maintain its going concern value and maximize the value of the Purchased Assets for the benefit of creditors, pending a sale of substantially all of its assets to the Lender or highest bidder. In that regard, the Debtor has developed the Budget. The Debtor contemplates that it will continue its operations by utilizing the DIP Facility proceeds in accordance with the Budget.

**I.    Use of Cash Collateral and Post-Petition Advances and Adequate Protection**

30. William J. Andronico is the chief executive officer of the Debtor and has been authorized to sign and submit the Andronico Declarations in support of the Motion and other first day motions. As set forth therein, the Debtor has developed the 13-week rolling Budget which provides for that period commencing on the Petition Date and continuing through the Cash Collateral Period. The Budget is divided into weekly periods. The Debtor has analyzed the

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx   11   MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963   Doc# 23   Filed: 08/23/11   Entered: 08/23/11 22:19:49   Page 11 of 15

immediate cash needs for the next three weeks (the "Interim Period"), pending the final hearing on this Motion and has identified those expenditures that the Debtor anticipates will be necessary to make during the Interim Period prior to the final hearing, and without which the Debtor will be irreparably harmed. The Debtor requests authorization to use cash collateral and post-petition secured financing during the Interim Period to the extent necessary to prevent immediate and irreparable harm to the Estate. The balance of the Budget reflects anticipated revenues and the Debtor's operating needs through the remainder of the Cash Collateral Period. The Budget reflects the Debtor's efforts to continue operations and maintain its going concern value. The Budget will "roll over" with each successive week as agreed upon between the Debtor and the Lender such that the Budget will always show budgeted expenses and anticipated revenues for 13 weeks for each successive budget.

31. The Andronico Declarations and the Budget demonstrate that the Debtor is unable to obtain unsecured financing from any source, that the use of cash collateral and post-petition secured financing to continue the ongoing operations will preserve the going concern value of the Debtor and thus provide adequate protection to the Lender, and that the Debtor is prepared to provide additional adequate protection in the form of the DIP Facility Lien, the Replacement Lien, the Superpriority Claim and reasonable reporting requirements.

**J. Terms of the DIP Facility**

    **i) Amount, Interest Rate, Fees and Maturity Date**

32. The maximum of the aggregate Post-Petition Advances Advance commitment shall be $5,000,000. The outstanding principal will accrue interest at the rate of 10%. There is a commitment fee of $50,000. The maturity date is the first to occur of (a) October 31, 2011, (b) the effective date of a plan of reorganization or liquidation for Debtor, (c) the date that is 30 days after entry of the Interim Financing Order if the Final Financing Order has not been entered by that date, (d) the sale of a material portion of the Debtor's assets in one or more transactions under Section 363 of the Bankruptcy Code, or (e) the occurrence of an event of default as provided in Section 8.2 of the Agreement.

/ / /

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx 12 MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963    Doc# 23    Filed: 08/23/11    Entered: 08/23/11 22:19:49    Page 12 of 15

ii) **The DIP Liens**

33. The obligations of the Debtor under the Loan Agreement shall be secured by the grant of security interests in the Collateral, subject only to the payment of the U.S. Trustee fees and a carve-out:

Pursuant to § 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in and lien upon all assets of the Debtor, whether existing on the Petition Date, or thereafter acquired, that, as of the Petition Date are not subject to valid, perfected and non-avoidable liens;

Pursuant to § 364(c)(3) of the Bankruptcy Code, a junior security interest in and lien upon all assets of the Debtor, whether existing on the Petition Date, or thereafter acquired, that, as of the Petition Date are subject to valid, perfected and non-avoidable liens;

34. However, the collateral shall not include any retainers paid or deposited before the Petition Date by the Debtor to or with its professionals for professional services and expense reimbursement in connection with the Bankruptcy Case, except to the extent those retainers are not exhausted, as more fully set forth in the DIP Credit Agreement, and any rights of the Debtor or a subsequent chapter 11 or chapter 7 trustee to recover property and to avoid liens or other property interest under the Bankruptcy Code, and all property interests recovered or obtained thereby, under §§ 544 through 548, inclusive, of the Bankruptcy Code.

iii) **The Superpriority Administrative Expense Claim**

35. The Adequate Protection Obligations shall have the status in the Case of superpriority administrative expenses under Section 364(c)(1) of the Bankruptcy Code. Such administrative claim shall have priority, subject to the Carve-Out, over all other claims, costs and expenses of the kinds specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726 or any other provision of the Bankruptcy Code.

iv) **Events of Default**

36. Events of Default under the Loan Agreement include, but are not limited to (i) attempts to prime the Lender's DIP Credit Facility, (ii) the appointment of a trustee, receiver or examiner, (iii) the conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx  13  MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963    Doc# 23    Filed: 08/23/11    Entered: 08/23/11 22:19:49    Page 13 of 15

Code, (iv) the dismissal of the Bankruptcy Case by the Bankruptcy Court, and (v) the failure by the Debtor to meet any of certain milestones set forth in the DIP Credit Agreement.

        v)      **Remedies on Event of Default**

37. Upon the occurrence of an uncured "Event of Default", the Debtor's authorization to use cash collateral and the Lender's obligation to make the Post-Petition Advances will terminate. In addition, the DIP Credit Agreement provides that upon the occurrence of an Event of Default and at any time thereafter, the automatic stay imposed by Section 362(a) of the Bankruptcy Code shall be lifted with respect to the Lender at 5:00 p.m. (Pacific time) on the third business day after written notice by the Lender to the Borrower, the United States Trustee and any committee, so that the DIP Lender may exercise any or all of the following rights and remedies.

**K.    Interim Approval Should Be Granted.**

38. Rule 4001(b) of the Federal Rules of Bankruptcy Procedure provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 15 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

39. The Debtor has agreed with the Lender on the terms for continued use of cash collateral and post-petition secured financing. The Debtor requests that the Court approve the use of cash collateral and post-petition advances under the DIP Facility during the Interim Period in accordance with the Budget pending final approval of the Motion. The Budget and the Andronicos Declaration have identified those expenses which are required to be paid during the Interim Period in order to avoid immediate and irreparable harm to the Debtor. The Debtor believes that failure to pay these expenses before the final hearing will cause immediate and irreparable harm to the estate, making it impossible for the Debtor to continue to operate its business, and will undermine the Debtor's chances of a successful reorganization.

**WHEREFORE**, the Debtor requests that this Court:

1. Conduct a preliminary hearing on this motion at the earliest possible date;
2. Following said preliminary hearing, make and enter its order or orders;

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx    14    MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963   Doc# 23   Filed: 08/23/11   Entered: 08/23/11 22:19:49   Page 14 of 15

a. Finding that notice of the preliminary hearing was adequate under the circumstances of this case;

   b. Authorizing the Debtor to use cash collateral and obtain post-petition secured financing pursuant to the Budget pending the final hearing on this Motion;

   c. Authorizing the Debtor to take such acts and executes such documents as are necessary to carry out said order; and

3. Fix the date and time for the final hearing to approve the Debtor's use of cash collateral and at such hearing, enter its final order authorizing the Debtor's secured post-petition financing and use of cash collateral pursuant to the terms described herein.

Dated: August 23, 2011

**MURRAY & MURRAY**
A Professional Corporation

By: */s/ Robert A. Franklin*
    Robert A. Franklin
    Attorneys for Debtor

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\v9.docx    15    MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . . .

Case: 11-48963    Doc# 23    Filed: 08/23/11    Entered: 08/23/11 22:19:49    Page 15 of 15