JOHN WALSHE MURRAY (074823)
DORIS A. KAELIN (162069)
JENNY LYNN FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: dkaelin@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re:

**ANDRONICO'S MARKETS, INC.,**
A California Corporation, aka
Andronico's Community Markets,

    Debtor.

1200 Irving Street
San Francisco, CA 94122

Employer Tax I.D. No.: 94-1307395

Case No. 11-48963-EDJ-11

Chapter 11

*[To Be Determined Pursuant To Motion For Order Shortening Time]*

**EXHIBIT "A"**

**TO**

**MOTION TO APPROVE OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTOR**

# [Proposed] Bid Procedures[1]

These Bid Procedures have been approved by order of the United States Bankruptcy Court for the Northern District of California, Oakland Division (the "Court") in connection with the bankruptcy case of Andronico's Markets, Inc. (the "Debtor"), which order was entered on August ___, 2011 [Doc. No. ___] (the "Bid Procedures Order").

These Bid Procedures set forth the process by which the Debtor is authorized to conduct the sale (the "Sale") by auction of substantially all of its assets (the "Assets,") including, without limitation, that portion of the Assets defined as the "Acquired Assets" in the Asset Purchase Agreement dated as of August __, 2011 (the "Purchase Agreement"), by and among the Debtor and Renwood Andronico Lending 1, LLC ("Purchaser"), pursuant to the terms and conditions substantially in the form of the Purchase Agreement. Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Purchase Agreement. An electronic version of the Purchase Agreement is available at www.AndronicosMarketsRestructuring.com.

> Copies of the Bid Procedures Order, Purchase Agreement or other documents related thereto are available upon written request to Debtor's bankruptcy counsel, Murray & Murray, 19400 Stevens Creek Boulevard, Suite 200, Cupertino, California 95014-2548, Attn: Doris A. Kaelin, Esq., counsel for the Debtor, Tel (650) 852-9000, Fax (650) 852-9244, dkaelin@murraylaw.com.

These Bid Procedures set forth the terms by which prospective bidders may qualify for and participate in the Auction (defined below), thereby competing to make the highest or otherwise best offer for substantially all of the Assets.

Interested parties shall have until the Bid Deadline to conduct due diligence. Access to the estate's records may be obtained by contacting the Debtor's financial and restructuring advisor, William R. Brinkman, Andronico's Markets, Inc., 1200 Irving Street San Francisco, CA 94122; Tel: (415) 218-3439; Fax: (415) 651-9750; bill.brinkman@BEBLLC.com. Interested parties will be required to execute a confidentiality agreement in order to obtain confidential information from the Debtor.

**A.      Stalking Horse Bidder**

On August __, 2011, the Debtor and Purchaser entered into the Purchase Agreement for the acquisition of the Assets pursuant to which, among other things: (i) Purchaser agreed to pay twenty million dollars ($20,000,000) in a combination of cash and a credit bid against the Debtor's obligations to Purchaser under the DIP Facility and/or the Prepetition Debt (Purchaser shall have the sole discretion to determine whether its credit bid is on account of Prepetition Debt or amounts owed under the DIP Facility) (the "Initial Credit Bid Amount"), which includes (a) the Cure Costs, and (b) assumption of the Assumed Liabilities, including the funding of certain administrative expenses as specified in the Purchase Agreement (collectively, the "Purchase Price") for the Assets, subject to the outcome of the Auction and the entry of an order of the Court ("Sale Order") approving the sale of the Assets and the transfer of the Assumed Liabilities; and (ii) the Debtor agreed, in the event that the Court approves, and the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the MOTION FOR ORDER APPROVING OVERBID PROCEDURES AND RELATED MATTERS RE SALE OF CERTAIN ASSETS OF THE DEBTOR (Dkt. No. ___).

Debtor consummates, the acquisition of substantially all of the Assets by any Person or combination of Persons other than Purchaser (a "Competing Transaction") to pay the bid protections approved by the Bankruptcy Court of $600,000 (the "Break-Up Fee").

**B.     Participation Requirements**

To participate in the bidding process and to obtain access to any due diligence materials, a person (other than Purchaser) interested in purchasing any of the Assets (a "Potential Bidder") must deliver (unless previously delivered) to both (i) Andronico's Markets, Inc., 1200 Irving Street San Francisco, CA 94122, Attn: William R. Brinkman, Tel: (415) 218-3439; Fax: (415) 651-9750; bill.brinkman@BEBLLC.com; and (ii) Murray & Murray, 19400 Stevens Creek Boulevard, Suite 200, Cupertino, CA 95014-2548, Attn: John Walshe Murray, Esq., Tel (650) 852-9000, Fax (650) 852-9244, jwmurray@murraylaw.com.; (the "Preliminary Bid Documents"):

1. An executed confidentiality agreement (the "Confidentiality Agreement") in the form available at www.AndronicosMarketsRestructuring.com or by writing, emailing or faxing Debtor's bankruptcy counsel at the address, email address and fax number on page 1 of these Bid Procedures, with such changes reasonably acceptable to the Debtor;

2. Preliminary written proof by the Potential Bidder of its financial capacity to close the proposed transaction, including, but not limited to, its ability to satisfy the standards to provide adequate assurance of future performance of any contracts and leases to be assumed and assigned under section 365 of the Bankruptcy Code, which may include current unaudited or verified financial statements of, or verified financial commitments (i.e. banking or capital references) obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which must be deemed satisfactory to the Debtor.

Within two (2) business days after a Potential Bidder delivers the Preliminary Bid Documents, the Debtor shall determine and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Preliminary Bid Documents. The Debtor may work with Potential Bidders during the two (2) business day period to attempt to correct or cure any deficiencies in any Preliminary Bid Documents. Only those Potential Bidders whose Preliminary Bid Documents have been deemed acceptable by the end of such two (2) business day period (as it may be extended by the Debtor) (each, an "Acceptable Bidder") may conduct due diligence with respect to the Debtor or submit bids to acquire substantially all of the Assets and assume all of the Assumed Liabilities. Purchaser is deemed an Acceptable Bidder.

**C.     Obtaining Due Diligence Access**

After notification of Acceptable Bidder status, the Debtor shall provide each Acceptable Bidder reasonable due diligence information, as requested, including access to an electronic data room, as soon as reasonably practicable after such request. To the extent the Debtor gives any information to any Acceptable Bidder that it had not previously provided to Purchaser, the Debtor shall make such information available to Purchaser. The due diligence period will end on the Bid Deadline (as defined herein). The Debtor shall be entitled to use its business judgment in determining the extent to which any Acceptable Bidder is entitled to receive confidential competitive information as part of the due diligence process.

D. Bid Requirements

Any Acceptable Bidder that is interested in being a participant in the Auction and acquiring all or substantially all of the Assets (each a "Bidder") must submit a "Bid" as provided herein prior to 5:00 p.m. Pacific time on September__, 2011 [two business days before the Sale Hearing] (the "Bid Deadline"). Any such Bid must:

(1) Identify the bidder(s), i.e. including any party for whom it may be bidding with or on behalf and whether the bidder is a party to any agreement limiting the bidders at the Auction.

(2) Contain (x) a signed definitive asset purchase agreement in substantially the form of the Purchase Agreement (the "Competing Purchase Agreement") and (y) a comparison of such Competing Purchase Agreement marked to show all changes from the Purchase Agreement. A Competing Purchase Agreement must:

(i) Clearly designate the Assets or other assets of the Debtor to be acquired and have similar terms and conditions as the Purchase Agreement. No bid shall provide for the purchase of only a portion of the Assets; however, prospective Acceptable Bidders may submit a "joint bid" for the Assets; provided, however, that the identity of each person participating in such "joint bid" must be disclosed in the Bid, and such "joint bid" shall be subject to section 363(n) of the Bankruptcy Code.

(ii) Provide for a purchase price with respect to the Assets in the sum of at least $20,850,000, which is comprised of the Purchase Price, plus the Breakup Fee and an initial overbid of $250,000.

(iii) Provide that the Acceptable Bidder will forfeit the Sale Deposit (defined below), as liquidated damages if such Acceptable Bidder defaults under the Competing Purchase Agreement.

(iv) The Bid shall not be subject to any (a) financing contingency, (b) contingency relating to the completion of unperformed due diligence, (c) contingency relating to the approval of the Acceptable Bidder's board of directors or other internal approvals or consents, or (d) any conditions precedent to the Acceptable Bidder's obligation to purchase the Assets other than those included in the Purchase Agreement.

(v) No Bid shall provide for the payment to the Acceptable Bidder of any breakup fee, topping fee, expense reimbursement or other similar arrangement.

(3) Include a deposit (the "Sale Deposit") in the form of either a wire transfer to an account specified by the Debtor or a certified check in the amount of One Million Dollars ($1,000,000) payable to the order of the Debtor. The Sale Deposit shall be held in escrow in a segregated account of the Debtor (or its financial and restructuring advisor) pending the closing of the asset sale. The full amount shall be forfeited as liquidated damages if such Acceptable Bidder is the Successful Purchaser (defined below) and fails to close the transaction because of a breach or failure to perform on the part of the Successful Purchaser.

(4) Each Bidder must confirm in writing its agreement to accept and abide by the terms, conditions and procedures of the Bid Procedures Order.

(5) A Bid must provide that it is irrevocable until two (2) business days after the closing of the Sale. Each Acceptable Bidder that participates in the Auction (as defined below) further agrees that its final and best bid at the conclusion of the Auction, if not deemed the Successful Bid, shall serve, without modification, as a back-up bid as may be designated by the Debtor at the Sale Hearing, in the event the Successful Purchaser fails to close as provided by these Bid Procedures, the Bid Procedures Order and the Sale Order.

(6) Be submitted to counsel for the Debtor so as to be received not later than the Bid Deadline. Counsel shall, as soon as practicable, send a copy of each Bid received, if any, to the following parties: (i) Purchaser, (ii) counsel to Purchaser, (iii) counsel to any official committee that may be appointed; and (iv) either counsel to each Acceptable Bidder submitting a bid, or if a Acceptable Bidder does not have counsel, to any other Acceptable Bidder.

E.  Credit Bidding

Purchaser shall have the right to make a credit bid for all of the collateral securing its claims to the full extent permitted by section 363(k) of the Bankruptcy Code and Purchaser shall have the sole discretion to determine whether its credit bid is on account of Prepetition Debt or amounts owed under the DIP Facility. Purchaser shall be entitled to bid amounts in excess of the outstanding debt under the Prepetition Debt or DIP Facility. At the Sale Hearing (defined below), to the extent that Purchaser is the Successful Purchaser, it must produce evidence at the Sale Hearing of its ability to provide adequate assurances under the Bankruptcy Code.

F.  Evaluation of Qualified Bids

Prior to the Auction, the Debtor shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtor's judgment, the highest or otherwise best bid (the "Starting Bid"). No later than 5:00 p.m. Pacific time on September __, 2011 [one business day prior to the hearing] the Debtor shall notify Purchaser and all parties who have submitted Qualified Bids as to whether there will be an Auction, and if so, which Qualified Bid is the Starting Bid.

G.  "As Is, Where Is"

The sale of the Debtor's assets that are the subject of the Motion shall be on an "as is, where is" basis without representations or warranties of any kind or nature, except to the extent set forth in the respective definitive purchase agreement(s) with the Successful Purchaser. Except as may be set forth in the definitive purchase agreement(s), any and all of the Debtor's assets shall be sold free and clear of any and all liens, claims, encumbrances, restrictions, charges and encumbrances of any kind or nature to the fullest extent permissible under applicable law, with such liens, claims, encumbrances, restrictions, charges, and encumbrances to attach to the net proceeds of sale in their order of priority.

H.  No Qualified Bids

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur and Purchaser will be deemed the Successful Purchaser. Subject to the termination rights under the Purchase Agreement, the Debtor will seek approval of the Sale to Purchaser at the Sale Hearing, including approval of the Purchase Agreement and authorizing the sale of the Assets and the transfer of the Assumed Liabilities.

I.   Auction and Sale Hearing

In the event that the Debtor determines, in its reasonable discretion, that one or more Bids have been received that meet the requirements set forth above has been received from a Bidder (a "Qualified Bidder"), then the Debtor will conduct the auction (the "Auction") at the Sale Hearing in the Bankruptcy Court to determine the highest and best bid for the Assets. All bids must be for cash acceptable to the Debtor. The Debtor shall determine the highest and best bid in its sole discretion.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

(1) The Qualified Bidders, including Purchaser, shall appear in person or through duly-authorized representatives at the Auction.

(2) Only Qualified Bidders and their duly authorized representative, including Purchaser, shall be entitled to bid at the Auction.

(3) The Debtor and its advisors will direct the Auction, in consultation with any creditors' committee, subject to the requirements of the Bankruptcy Court which will preside over the Auction.

(4) Bidding at the Auction shall begin at the Starting Bid.

(5) Subsequent bids at the Auction, including any bids by Purchaser, shall be made in minimum increments of $100,000.

(6) Purchaser, to the extent it participates in the Auction, shall receive a credit equal to the Initial Credit Bid Amount, any amounts bid in excess of the Initial Credit Bid Amount (only up to the full amount of the Prepetition Debt and the DIP Facility), and the Break-Up Fee in each round of bidding when bidding at the Auction.

(7) Each Qualified Bidder will be informed of the terms of the previous bids.

(8) The bidding will be part of the official record of the Sale Hearing and be recorded to ensure an accurate recording of the bidding at the Auction.

(9) At the Auction, all Qualified Bidders may submit further bids, along with a markup or a further markup of the Purchase Agreement. The Auction will be conducted in rounds. All bidders must participate in each round of bidding or they will forfeit their right to participate in the Auction. At any time, a bidder may request that the Debtor announce, subject to any potential new bids, the then current highest and best bid. If requested, the Debtor shall use reasonable efforts to clarify any and all questions any Qualified Bidder may have regarding the Debtor's announcement of the then current highest and best bid. If requested by the Debtor, all Qualified Bidders shall bid in the order determined by the Bankruptcy Court.

(10) Each Bid made at the Auction must remain open and binding on the Qualified Bidder for (a) each round of bidding and, (b) if for those Qualified Bidders not selected as the Successful Bid, for purposes of serving as a Back-up Bid as defined below.

-5-

(11) The Debtor may announce at the Auction such additional rules for bidding at the Sale hearing that, in its judgment, will better promote the goals of the bidding process and that are not inconsistent with the Bid Procedures, the Bid Procedures Order or any other order in the Debtor's chapter 11 case.

(12) Absent irregularities in the implementation of these Bid Procedures, the Court will not consider bids made after the Auction is closed.

J. Conclusion of the Auction and Sale Hearing

Upon the conclusion of the Auction (if such Auction is conducted), the Debtor, in the exercise of its reasonable, good-faith business judgment, and after consulting with its advisors and any creditors' committee, shall identify the highest or otherwise best bid for approval by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code (the "Successful Bid"). The Qualified Bidder having submitted the Successful Bid will be deemed the "Successful Purchaser." The Successful Purchaser and the Debtor shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

Prior to the Bankruptcy Court approving a Successful Bid, the bidder recommended by the Debtor as the Successful Bidder shall supplement the Court's record with evidence establishing such bidder's provision of adequate assurance of future performance of executory contracts and unexpired leases to be assumed and assigned to such bidder.

Any bidder that intends to request that the Bankruptcy Court make a finding under Bankruptcy Code Section 363(m) that such bidder's purchase of the Assets or the assignment to it of an executory contract or unexpired lease is in good faith, shall, in advance of the Sale Hearing, file with the court and serve on the Notice Parties (defined below), a written declaration of a competent witness demonstrating (A) the bidder's good faith, and (B) the absence of fraud or collusion between the bidder and any other bidder, or between the bidder and the Debtor's or the estate's agents or employees. The declaration must also disclose any facts material to the good faith determination, including:

(a) The bidder's pre- and post-petition relationships with (i) any other bidder, (ii) the Debtor or the Debtor's current or former officers, directors, agents or employees, and (iii) any of the Debtor's major creditors or equity security holders;

(b) The bidder's anticipated relationship after the sale with any of the Debtor's current or former officers, directors, agents or employees;

(c) Whether any offers of employment or compensation have been or will be made to any of the Debtor's current or former officers, directors, agents or employees; and

(d) Whether the bidder has paid or contemplates paying consideration in connection with the sale to any person other than the Debtor.

K. Sale Hearing

A hearing to consider approval of the Sale of the Assets and the transfer of the Assumed Liabilities to the Successful Purchaser (or to approve the Purchase Agreement if no Auction is held) (the "Sale Hearing") and seek entry of a Sale Order is presently scheduled to take place on September __ 2011 at ___.m.] (prevailing Pacific Time), or as soon thereafter as counsel may be heard, before the Honorable Edward Jellen, United States Bankruptcy Judge for the United States Bankruptcy Court for the Northern District of California, Oakland Division, at

1300 Clay Street, Courtroom No. 215, Oakland, CA 94612. The Debtor and the Successful Purchaser, once the Successful Purchaser has been determined, shall each use their commercially reasonable efforts, and shall cooperate, assist and consult with each other, to secure the entry of the Sale Order, which is reasonably acceptable to the Debtor and the Successful Purchaser, of the Court in the Bankruptcy Case (i) approving the Purchase Agreement, (ii) authorizing the sale of the Assets pursuant to section 363 of the Bankruptcy Code, free and clear of all liens, claims, interests and encumbrances to the fullest extent allowed by applicable law, and (iii) authorizing the assumption and/or assignment of the executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code, including appropriate good faith findings and similar provisions.

The Sale Hearing may be continued to a later date by the Debtor by sending notice to the Notice Parties and all prospective bidders prior to, or making an announcement at the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.

L. Designation of Back-Up Bidder

Upon the conclusion of the Auction and the selection of the Successful Purchaser, the Debtor may, in consultation with its advisors and any creditors' committee, select the entity submitting the next highest or otherwise best Qualified Bid (the "Back-Up Bidder"). The bid of the Back-Up Bidder shall remain open until the first business day following the closing of a sale of the Assets to the Successful Purchaser. If for any reason the Successful Purchaser is unable or unwilling to consummate an approved sale because of breach or failure to perform on the part of the Successful Purchaser, (a) it will forfeit its Sale Deposit to the Debtor as liquidated damages in lieu of any other damages with respect to such breach, and (b) the Back-Up Bidder shall be deemed to be the Successful Purchaser, the purchase price shall be the amount of such Back-Up Bidder's last bid, and the Debtor shall be authorized to effectuate the sale to the Back-Up Bidder without further order of the Bankruptcy Court. If, for any reason, the Back-Up Bidder fails to perform, Purchaser agrees that if the Debtor tenders full performance of all of its obligations under this Agreement to Purchaser on or before October __, 2011, and the Purchase Agreement is not otherwise materially breached by the Debtor, Purchaser shall purchase the Purchased Assets under the terms of the Purchase Agreement.

M. Break-Up Fee

At the closing of the sale to the Successful Purchaser, if the Successful Purchaser is not Purchaser, the Debtor shall pay to Purchaser, by wire transfer in immediately available funds to an account designated by Purchaser, all amounts due to Purchaser, including the Break-Up Fee in accordance with the applicable provisions of the Purchase Agreement.

N. Return of Sale Deposit

The Sale Deposit of the Successful Purchaser shall, upon consummation of the purchase of substantially all of the Assets, be credited to the purchase price paid for the Assets. If the Successful Purchaser fails to consummate the purchase of the Assets, then the Sale Deposit shall be forfeited to, and be retained irrevocably by, the Debtor.

The Sale Deposit of any unsuccessful Qualified Bidders will be returned within fifteen (15) days after consummation of the Sale.

O. Reservation of Rights to Modify Bid Procedures

The Debtor reserves the right, following consultation with its advisors and any creditors' committee to modify these Bid Procedures in any manner that is not inconsistent with the Purchase

Agreement or the Bid Procedures Order and that will best promote the goals of the bidding process and to impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Assets and the transfer of the Assumed Liabilities, including, without limitation, modifying the requirements for a Qualified Bid, extending the deadlines set forth in these Bid Procedures, adjourning the Auction and/or adjourning the Sale Hearing in open court without further notice. Notwithstanding the foregoing, the provisions of this paragraph shall not operate or be construed to permit the Debtor to (A) accept any Qualified Bid that (x) does not comply with these Bid Procedures, or (y) does not equal or exceed the Overbid Amount, or (B) impose any terms and conditions on Purchaser that are contrary to or in breach of the terms of the Purchase Agreement or the DIP Credit Agreement other than any such terms or conditions set forth in these Bid Procedures or the Bid Procedures Order.

P. Notice Parties

The Notice Parties hereunder are as follows: (i) Andronico's Markets, Inc., 1200 Irving Street San Francisco, CA 94122, Attn: William R. Brinkman; (ii) counsel to the Debtor, Murray & Murray, A Professional Corporation, 19400 Stevens Creek Blvd., Suite 200, Cupertino, California 95014, Attn: John Walshe Murray, Esq.; (iii) counsel to the Purchaser, Perkins Coie LLP, 1120 NW Couch Street, 10th Floor, Portland, OR 97209, Attn: Jeanette L. Thomas; and (iv) counsel for any creditors' Committee appointed.