JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
JENNY LYNN FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: rfranklin@murraylaw.com
Email: jlfountain@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

In re:

**ANDRONICO'S MARKETS, INC.,**
A California Corporation, aka
Andronico's Community Markets,

Debtor.

1200 Irving Street
San Francisco, CA 94122

Employer Tax I.D. No.: 94-1307395

Case No. 11-48963-EDJ-11

Chapter 11

[*No Hearing Requested*]

**EXHIBIT "A"**

**TO**

**DECLARATION OF WILLIAM R. BRINKMAN IN SUPPORT OF
EX PARTE APPLICATION OF DEBTOR FOR ORDER AUTHORIZING
AND APPROVING EMPLOYMENT OF FINANCIAL ADVISOR**
(BAILEY, ELIZONDO & BRINKMAN, LLC)



August 18, 2011

William J. Andronico
Chief Executive Officer
Andronico's Markets, Inc.
1200 Irving Street
San Francisco, CA 94122

Dear Bill:

This letter agreement (the "Agreement") sets forth the terms and conditions of the engagement between Bailey, Elizondo & Brinkman, LLC ("BEBLLC" or "we" or "us") and Andronico's Markets, Inc. ("Andronico's" or the "Company"). Upon execution of the Agreement by each of the parties below and receipt of the retainer described in the Agreement, BEBLLC will serve as financial advisor and investment banker to Andronico's.

This Agreement confirms that the Company has retained BEBLLC to perform the following duties:

- a) Pursuant to and except as limited by the terms of this Agreement, BEBLLC shall be authorized at the direction of the Chief Executive Officer and the Board to:
    - i) Advise the Company with regards to restructuring actions as the Company commences a case under Chapter 11 of Title, 11, United States Bankruptcy Code. This may include:
        1) Representing the Company at meetings of creditors or other parties of interest;
        2) Assisting in the preparation of the petition, motions, schedules, plans, forms or any other document or analysis reasonable and necessary as part of a Chapter 11 proceeding; or
        3) Advising the company with regards to potential assets sales, and, acting as investment banker and sell-side advisor;
        4) Preparing a Plan of Reorganization or Plan of Liquidation.

      ii) Market the Company, or its assets, for sale, and evaluate the Company's strategic options including the sale or reorganization of the Company in Chapter 11. This may include, if directed by the Company or if required by the Court, the following:

1) Updating the materials used to market the Company for sale and to present the Company most favorably to potential buyers, including asset detail, asset valuation information, projections, sales procedures and §363 auction guidelines;
2) Developing and implementing a marketing plan and timetable, matched to available resources, to best solicit qualified buyers;
3) Contacting potential buyers previously identified and contacted with regards to the potential purchase of all, or part of, the Company's assets;
4) Managing and coordinating all aspects of the sale process, including information flow, solicitation of and negotiations with potential buyers, and updating of data in the online data room;
5) Negotiating with potential Stalking Horse bidders or other bidders as part of the preparation and execution of an Asset Purchase Agreement.
6) Managing the auction process to ensure the Estate receives the highest and best offer; and,
7) Providing assistance to the Company when requested to shepherd the transaction through to confirmation by the Bankruptcy Court.

      iii) Advise the Company and the Board with respect to all aspects of the restructuring of the Company, including to:

1) Provide oversight and guidance regarding cash flow, financial reporting and other finance matters;
2) Monitoring of financial performance; and,
3) Serving as the interface with lenders, attorneys, financial advisors, and other various professionals relating to the restructuring or Chapter 11 process.

b) Advise the Company with regards to capital structure including shareholder, lender, supplier, creditor, lender and leasing contracts or agreements, as well as documentation for any other significant transaction.

c) Assist in the sizing and negotiations of any debtor-in-possession financing.

d) Provide additional financial analysis as needed to support business decisions.

e) Meet with the Board and other appropriate parties to review our progress and clarify any issues, if necessary.

In addition to the above duties, this Agreement confirms the following:

a). **Scope of Services and Client Duties**. The Company is hiring BEBLLC as its financial advisor and investment banker. Our responsibilities will be to provide Andronico's with the services and completion of the tasks outlined in this Agreement. We will keep you informed on the progress of the matters we are handling and respond in a timely manner to your inquiries. If the scope of services is materially changed by mutual agreement between the Client and BEBLLC, a new Agreement or amendment to this Agreement will be executed.

The Company understands the need for complete and accurate information. The Company also understands the need to cooperate and to keep us informed on a timely basis of any developments as may impact upon the services that we are to provide. During the course of our work, a matter may come to our attention that might warrant the performance of additional or expanded procedures. Before addressing such matters we will discuss them with the Company promptly in order for you to assess the need for additional or expanded work.

b). **Fees and Billing Practices.** Professional fees are determined by the number of hours expended multiplied by the hourly billing rate for each professional involved. We will provide the Client with a detailed invoice on a regular basis, and our billing practices will conform to the requirements of the Bankruptcy Court. The Company, subject to any necessary approval by the Bankruptcy Court, shall pay BEBLLC the following fees.

   i) We will require a security retainer of $175,000 (the "Chapter 11 Security Retainer") for our representation of the Company in the Chapter 11 case. This is not a flat fee or a one-time payment but rather a payment held by BEBLLC to secure payment of advisor fees and costs incurred in the Chapter 11 case pursuant to this Agreement. As we have discussed, the ultimate amount of fees and costs in the Chapter 11 case may exceed the Chapter 11 Security Retainer. The Company hereby grants to BEBLLC a security interest in the Chapter 11 Security Retainer. Upon possession, and pursuant to Section 9313 of the California Commercial Code, BEBLLC will hold a valid, perfected and senior security interest in the Chapter 11 Security Retainer. The Chapter 11 Security Retainer shall be deemed a client trust fund to be held in our firm's client trust account subject to a repayment obligation if not fully earned as discussed below. BEBLLC will not draw down against the Chapter 11 Security Retainer except as authorized by the Court.

   ii) We will submit monthly invoices to the Company detailing accrued advisory fees and costs. Upon the commencement of the bankruptcy case, we will have the right to move the Bankruptcy Court for an order approving an interim compensation procedure allowing the Company to pay advisory fees and costs on a monthly basis, and if such interim compensation procedure is approved by the Court, such fees and costs shall be so paid within ten (10) days of the Company's receipt of our invoice. In the event that we do not so move the Court or the Court does not approve such an interim compensation procedure, we will

have the right to apply to the United States Bankruptcy Court for advisory fees and costs pursuant to the provisions of the Bankruptcy Code, which authorizes applications for such interim compensation to be submitted once every one hundred and twenty (120) days, or more frequently if authorized by the Court. Payment shall be immediately forthcoming upon Court approval of such fees and costs. Any amounts due our firm pursuant to this Agreement that remain unpaid after thirty (30) days from our written request for payment of Court-approved fees and costs will accrue interest at the legal rate under California law.

iii) Payments to be made via wire transfer to the BEBLLC account as follows:

> JP Morgan Chase
> BAILEY, ELIZONDO & BRINKMAN LLC
> Account Number: 844654061
> Routing Number: 322271627
> EIN: 26-4351787

iv) Our professional fees are determined by the number of hours expended multiplied by our hourly billing rates set forth in the below schedule:

| Principals | $350 |
| Directors | $275 - $325 |
| Associates | $175 - $225 |
| Staff and Admin | $75 - $125 |

v) We typically incur various costs and expenses in the normal course of performing the engagement under this Agreement. Costs and expenses commonly include, but are not limited to: express mail, messenger and other delivery fees, information retrieval services, business travel costs, and other similar items. We do not charge for telephone, in-house copy or facsimile costs. All costs and expenses will be charged at our cost.

vi) Prior to a bankruptcy filing, we will provide the Company with regular invoices indicating fees and costs incurred. Upon commencement of a case under the Bankruptcy Code, BEBLLC understands that no compensation shall be paid to BEBLLC other than in connection with a bankruptcy court-approved fee application or interim payment process pursuant to the Bankruptcy Code in accordance to the order of the court.

c. **Indemnification.** Prior to filing for Bankruptcy protection, the Company shall indemnify and hold harmless BEBLLC and its personnel from and against any claims, liabilities, costs and expenses (including without limitation, attorneys' fees and the time of BEBLLC's personnel involved) brought against, paid or incurred by BEBLLC at any time and directly arising out of or relating to our services under this Agreement, except to the extent finally determined to have resulted from the gross negligence or willful misconduct

of BEBLLC's personnel. This provision shall survive the termination of this Agreement for any reason.

d. **Legal Action or Arbitration.** If any legal action, arbitration or proceeding is initiated concerning the terms and provisions of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and other costs incurred in such action, arbitration or proceeding. Notwithstanding the foregoing, in the event a bankruptcy proceeding is commenced by the Company, the Bankruptcy Court with jurisdiction over the Company's bankruptcy case shall have exclusive jurisdiction over all such actions or proceedings.

e. **Term, Discharge and Withdrawal.** The Company may discharge BEBLLC at any time. BEBLLC may withdraw from this engagement at any time. Upon discharge of, or withdrawal by, BEBLLC and termination of this Agreement, any balance of the Chapter 11 Security Retainer may be applied to all of BEBLLC's accrued but unpaid fees and costs subject to the Court's approval and authorization. Any amount of the Chapter 11 Security Retainer remaining thereafter will be returned to the Company.

f. **Entire Agreement.** This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements should they exist with respect thereto.

If the foregoing correctly sets forth the understanding and agreement between BEBLLC and the Client, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as August 18, 2011.

Very truly yours,

BAILEY, ELIZONDO & BRINKMAN, LLC

By: _____
Name: William R. Brinkman
Title: Principal
Date: 8/18/11

Agreed and Accepted:

ANDRONICO'S COMMUNITY MARKETS

By: _____
Name: Bill Andronico
Title: Chief Executive Officer
Date: _____

    of BEBLLC's personnel. This provision shall survive the termination of this Agreement for any reason.

    d. **Legal Action or Arbitration.** If any legal action, arbitration or proceeding is initiated concerning the terms and provisions of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and other costs incurred in such action, arbitration or proceeding. Notwithstanding the foregoing, in the event a bankruptcy proceeding is commenced by the Company, the Bankruptcy Court with jurisdiction over the Company's bankruptcy case shall have exclusive jurisdiction over all such actions or proceedings.

    e. **Term, Discharge and Withdrawal.** The Company may discharge BEBLLC at any time. BEBLLC may withdraw from this engagement at any time. Upon discharge of, or withdrawal by, BEBLLC and termination of this Agreement, any balance of the Chapter 11 Security Retainer may be applied to all of BEBLLC's accrued but unpaid fees and costs subject to the Court's approval and authorization. Any amount of the Chapter 11 Security Retainer remaining thereafter will be returned to the Company.

    f. **Entire Agreement.** This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and supersedes all previous agreements should they exist with respect thereto.

If the foregoing correctly sets forth the understanding and agreement between BEBLLC and the Client, please so indicate in the space provided below, whereupon this letter shall constitute a binding agreement as August 18, 2011.

Very truly yours,

BAILEY, ELIZONDO & BRINKMAN, LLC

By: _____

Name: William R. Brinkman

Title: Principal

Date: _____

Agreed and Accepted:

ANDRONICO'S COMMUNITY MARKETS

By: *[signature]*

Name: Bill Andronico

Title: Chief Executive Officer

Date: August 21, 2011