Entered on Docket
September 08, 2011
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: September 08, 2011

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge

JOHN WALSHE MURRAY (074823)
ROBERT A. FRANKLIN (091653)
JENNY LYNN FOUNTAIN (226241)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone:  (650) 852-9000; (408) 907-9200
Facsimile:  (650) 852-9244
Email:  jwmurray@murraylaw.com
Email:  rfranklin@murraylaw.com
Email:  jlfountain@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>**ANDRONICO'S MARKETS, INC.,**<br>A California Corporation, aka<br>Andronico's Community Markets,<br><br>Debtor.<br><br>1200 Irving Street<br>San Francisco, CA 94122<br><br>Employer Tax I.D. No.: 94-1307395 | Case No. 11-48963-EDJ-11<br><br>Chapter 11<br><br>Date: September 8, 2011<br>Time: 9:30 a.m.<br>Place: United States Bankruptcy Court<br>1300 Clay Street, Courtroom 215<br>Oakland, CA  94612<br>Judge: Honorable Edward D. Jellen |

**FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY; AND (5) GRANTING RELATED RELIEF**

Andronico's Markets Inc., a California corporation, the debtor and debtor in possession herein, (the "Debtor" or the "Company"), submitted its MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY; AND (5) GRANTING RELATED RELIEF (the "Motion") which came on for preliminary hearing on August 25, 2011 (the "Interim Hearing") and a final hearing on September 8, 2011 (the "Final Hearing") before the Honorable Edward D. Jellen, United States Bankruptcy Judge.  The Debtor appeared by John Walshe Murray of

Murray & Murray, A Professional Corporation; RENWOOD ANDRONICO LENDING 1, LLC, a Delaware limited liability company (the "DIP Lender") appeared by counsel Steven M. Hedberg of Perkins Coie LLP; the Official Committee of Unsecured Creditors (the "Committee") appeared by counsel David A. Honig of Winston & Strawn LLP; other appearances were as stated in the record. The Court entered an interim order approving the relief requested in the Motion and as set forth on the record of the Interim Hearing (the "Interim Order") on August 25, 2011. The Motion requests the entry of a final order (the "Final Order"):

(a)     authorizing and approving, pursuant to sections 105, 361, 362, 363, and 364 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), postpetition financing (the "DIP Facility"), from Renwood Andronico Lending 1, LLC, a Delaware limited liability company, or its affiliates (together with its successors, assigns and transferees, the "DIP Lender") to (i) fund, among other things, ongoing working capital needs of Debtor, and (ii) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) owed to the DIP Lender under the DIP Facility and the other DIP Facility Documents (as defined below);

(b)     authorizing Debtor to enter into and comply in all respects with the DIP Facility and the other DIP Facility Documents, and approval of all of the terms and conditions of the DIP Facility and the other DIP Facility Documents;

(c)     requesting that the financing under the DIP Facility, including, without limitation, as to all principal, accrued interest, unpaid fees and expenses, indemnification, and all other amounts due from time to time under the documents referred to below, including the Obligations[1] (collectively, the "DIP Facility Obligations"):

(i)     have priority, pursuant to section 364(c)(1) of the Bankruptcy Code, over any and all administrative expenses, subject only to the Carve-Out (as defined below), which allowed superpriority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of Debtor, as provided for herein; and

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Facility Documents.

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\Final Order.docx

2

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

(ii)     pursuant to section 364(c)(2) of the Bankruptcy Code, be deemed to be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior security interests in, and liens upon (all such liens and security interests granted to the DIP Lender, pursuant to the Interim Order, this Final Order and the DIP Facility Documents, the "DIP Facility Liens"), all prepetition and postpetition assets of Debtor that are not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date, whether now existing or hereafter acquired, including all of the real, personal and mixed property (including equity interests) and all monies and other property of any kind received on account thereof, and all proceeds thereof, in which DIP Facility Liens are granted whether pursuant to the Interim Order and Final Order, as applicable, the DIP Facility Documents, or otherwise, in each case as security for the DIP Facility Obligations (each of the foregoing, the "DIP Collateral"), but specifically being subject solely to the Carve-Out to the extent provided for below; and

(iii)     pursuant to section 364(c)(3) of the Bankruptcy Code, be deemed to be secured by valid, binding, continuing, enforceable, fully perfected and unavoidable DIP Facility Liens upon all DIP Collateral that is subject only to valid, perfected, enforceable and non-avoidable liens in existence on the Petition Date or valid liens in existence on the Petition Date that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code, but specifically being subject to the Carve-Out to the extent provided for below;

(d)     authorizing and approving the use of "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral") in which the DIP Lender has an interest;

(e)     authorizing and approving a grant, as of the Petition Date (defined below), the Adequate Protection Superpriority Claim (defined below) and Replacement Liens (defined below), to the extent of and as compensation for any Diminution in Value (defined below), as set forth more fully below and subject to the Carve-Out;

(f)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, the Interim Order, this Final Order and the other DIP Facility Documents; and

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\Final Order.docx

2

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

Case: 11-48963   Doc# 128   Filed: 09/08/11   Entered: 09/08/11 16:33:47   Page 3 of 22

(g)     The Bankruptcy Court's waiving of any applicable stay (including under Bankruptcy Rule 6004) and providing for the immediate effectiveness of the Interim Order (to the extent not already effective) and this Final Order.

This Court having found that due and appropriate notice, under the circumstances, of the Motion, the relief requested therein, the material terms of the Interim Order, the Final Order, the Interim Hearing and the Final Hearing was provided by Debtor pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), on the following parties:  (a) the Office of the United States Trustee (the "U.S. Trustee"); (b) counsel to the DIP Lender; (c) Debtor's twenty (20) largest unsecured creditors; and (d) all parties known by Debtor to claim any lien on or security interest in any of Debtor's assets (collectively, the "Interim Notice Parties"); the Court having considered all the pleadings filed with this Court; and having overruled all unresolved objections to the relief requested in the Motion; and upon the record made by Debtor at the Interim Hearing and the Final Hearing, including the Motion and other filings and pleadings in the Bankruptcy Case, and after due deliberation and consideration and good and sufficient cause appearing therefore;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     Petition Date.  On August 22, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern  District of California, Oakland Division (the "Bankruptcy Court").  Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.     Jurisdiction and Venue.  This Court has core jurisdiction over Debtor's chapter 11 case (the "Bankruptcy Case"), this Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Notice.  Notice of the Interim Hearing, the Motion and proposed entry of this Final Order has been provided to the Interim Notice Parties, the Committee (defined below) and Committee counsel.  Under the urgent circumstances, requisite notice of the Motion and the relief

requested thereby and the Interim Order and this Final Order has been provided in accordance with Bankruptcy Rules 4001(b) and (c) and 9014, which notice is sufficient for all purposes under the Bankruptcy Code and no further notice of, or hearing on, the Motion or this Final Order is necessary or required.

D. <u>Creditors' Committee</u>.  On August 25, 2011, the U.S. Trustee appointed the Committee.  The Committee is represented by counsel.

E. <u>Debtor's Stipulation as to Existing Secured Debt</u>.  Subject to the limitations contained in paragraph 11 of this Final Order, the Debtor, for itself, its estate and all representatives of its estate, admits, stipulates, acknowledges and agrees that:

(a) As of the Petition Date, Debtor owed DIP Lender approximately $29,945,493.70, consisting of principal of $27,721,315.55, contingent liability for issued letters of credit of $345,000.00, accrued interest of $1,682,781.70, and attorney fees and expense reimbursement of $197,000 (the "<u>Prepetition Obligations</u>"), pursuant to (i) the Credit Agreement dated as of February 14, 2007 between Debtor and Bank of the West, the predecessor to DIP Lender, as such agreement has been amended and modified from time to time and (ii) the Second Lien Credit Agreement dated as of February 14, 2007 between Debtor and Special Situations Investing, Inc., the predecessor to DIP Lender, as such agreement has been amended and modified from time to time (the "<u>Prepetition Loan Agreements</u>").  The Debtor hereby agrees that the DIP Lender has an allowed claim in the amount of the Prepetition Obligation without the necessity of filing a proof of claim.

(b) As collateral for the Prepetition Obligations, the DIP Lender has a first priority security interest in and lien upon (the "<u>Prepetition Liens</u>") all of the assets of the Debtor (the "<u>Prepetition Collateral</u>"), subject only to certain liens with priority over the Prepetition Liens.

(c) The Prepetition Obligations constitute the legal, valid and binding obligations of Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(d) No portion of the Prepetition Obligations is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral Final Order.docx

5

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

(e)     The Prepetition Liens in and to the Prepetition Collateral constitute valid, binding, enforceable, and perfected first-priority (subject only to certain liens with priority over the Prepetition Liens) liens in and to the Prepetition Collateral and are not subject to avoidance, reduction, recharacterization, disallowance, disgorgement, counterclaim, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(f)     Debtor hereby forever releases any claim, counterclaim, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the DIP Lender and its respective affiliates, partners, members, agents, officers, directors, employees, attorneys and advisors whether arising under or in connection with the Prepetition Loan Agreements, documents related thereto or the transactions contemplated thereunder, the Prepetition Obligations or the Prepetition Liens, including, without limitation, any right to assert any disgorgement or recovery.

(g)     The foregoing acknowledgments, stipulations and agreements are subject only to the rights of the Committee pursuant to paragraph 11 below.

F.     Findings Regarding Postpetition Financing

(a)     Debtor's Request.  Debtor has requested from the DIP Lender, and the DIP Lender is willing to extend, certain loans, advances and other financial accommodations, as more particularly described and on the terms and conditions set forth in this Final Order and the DIP Facility Documents.

(b)     Need for Postpetition Financing.  Good cause has been shown for entry of this Final Order.  Debtor has an immediate need to obtain the DIP Facility in order to permit, among other things, the orderly continuation of the operation of its business, the management and preservation of Debtor's assets and properties, to maintain business relationships with lessors, suppliers, employees and customers, to make payroll, to satisfy other working capital and operational needs and to maintain the going concern value of Debtor's estate.  Without such cash and credit, Debtor's estate would be irreparably harmed.

(c)     No Credit Available on More Favorable Terms.  Debtor represents that it is unable to obtain sufficient financing from sources other than the DIP Lender on terms more favorable than under the DIP Credit Agreement (as defined below and as attached to the

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash
Collateral Final Order.docx

6

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

SUPPLEMENTAL CERTIFICATE OF COMPLIANCE WITH GUIDELINES FOR CASH COLLATERAL AND FINANCING STATEMENTS filed in support of the Motion, subject only to non-material modifications as may be agreed to by the parties thereto) and any and all documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Credit Agreement, the "DIP Facility Documents") and is not able to obtain sufficient unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. Debtor is also unable to obtain unsecured credit with the enhanced priority afforded by section 364(c)(1) of the Bankruptcy Code. New credit is unavailable to Debtor without providing the DIP Lender with (a) the DIP Facility Superpriority Claims, (b) the DIP Facility Liens as provided herein and in the DIP Facility Documents, and (c) the postpetition rights and remedies provided herein and in the DIP Facility Documents.

(d)    Budget.  Debtor has prepared and delivered the budget (the "Budget") to the DIP Lender, a copy of which Budget is attached to the Motion and the DIP Credit Agreement. The Budget has been thoroughly reviewed by Debtor and its management. Debtor represents that the Budget is achievable and will allow Debtor to operate its business and otherwise conduct its Bankruptcy Case. The DIP Lender is relying upon Debtor's compliance with the Budget in accordance with the Interim Order in determining to enter into the postpetition financing arrangements provided for herein and in the DIP Facility Documents.

(e)    Business Judgment and Good Faith Pursuant to Section 364(e).  Based on the record of the Interim Hearing, the terms of the DIP Facility Documents and this Final Order are fair, just and reasonable under the circumstances, ordinary and appropriate for secured financing to Debtor, reflect Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration. The terms of the DIP Credit Agreement and the other DIP Facility Documents have been negotiated in good faith and at arm's length between Debtor and the DIP Lender, with all parties represented by counsel, and any credit extended, loans made, and other financial accommodations extended to Debtor by the DIP Lender shall be deemed to have been extended, issued, or made, as the case may be, in "good faith" as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral Final Order.docx

7

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

Case: 11-48963    Doc# 128    Filed: 09/08/11    Entered: 09/08/11 16:33:37    Page 7 of 22

afforded by section 364(e) of the Bankruptcy Code

(f)  <u>Good Cause, Immediate Entry</u>.  Debtor represents that the relief requested by the Motion is necessary, essential and appropriate and is in the best interests of and will benefit Debtor, its estate and its creditors as its implementation will, among other things, provide Debtor with the necessary liquidity to (i) minimize disruption to Debtor's business and on-going operations, (ii) preserve and maximize the value of Debtor's estate for the benefit of all of Debtor's creditors, and (iii) avoid immediate and irreparable harm to Debtor, its creditors, business, employees, and assets. Thus, good cause has been shown for the immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Such stipulations shall be binding on all parties and the estate except as provided in paragraph 11 of this Final Order.

G.  <u>Use of Cash Collateral and Proceeds of the DIP Facility, DIP Collateral and Prepetition Collateral</u>.  All Cash Collateral, all proceeds of the Prepetition Collateral and the DIP Collateral, including proceeds realized from a sale or disposition thereof, or from payment thereon, and all proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses payable under this Final Order) shall be used and/or applied in accordance with the terms and conditions of this Final Order and the other DIP Facility Documents, for the types of expenditures in the Budget and for no other purpose.

H.  <u>Adequate Protection Lien for Prepetition Lender</u>.  The DIP Lender has negotiated in good faith regarding the Debtor's use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtor's estate and continued operation of its businesses, in accordance with the terms hereof.  The DIP Lender has agreed to permit the Debtor to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof subject to the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under section 363(m) of the Bankruptcy Code.  The DIP Lender is entitled to adequate protection as and to the extent set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code.  Based on the Motion, the record presented to the Bankruptcy Court at the Interim Hearing, and the Final Hearing, the terms of the proposed adequate protection arrangements and of

Case: 11-48963    Doc# 128    Filed: 09/08/11    Entered: 09/08/11 16:33:37    Page 8 of 22

the use of the Cash Collateral are fair and reasonable, reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the DIP Lender's consent thereto.

Based upon the foregoing, and after due consideration and good cause appearing therefore; IT IS ORDERED, ADJUDGED AND DECREED, that:

1. **Motion Granted**. The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Final Order. This Final Order shall immediately be effective upon its entry.

2. **Objections Overruled**. All objections to the entry of this Final Order are withdrawn or resolved by the terms hereof or, to the extent not resolved, are overruled.

3. **Authorization of the DIP Financing Documents**. The Debtor executed that certain Debtor in Possession Credit Agreement dated August 24, 2011 (the "DIP Credit Agreement") by and between Debtor and the DIP Lender. The parties acknowledge that as of the date of this Final Order, any Events of Default (as defined below) under the DIP Credit Agreement have been cured by the Debtor or waived by the DIP Lender including, but not limited to, any defaults arising as a result of the terms of the Bid Procedures Order. Provided that the Debtor is not in default under the terms of this Final Order, the Debtor is immediately authorized to borrow under the DIP Facility from the DIP Lender in an amount not to exceed $5,000,000 and to continue to operate its business, in accordance with the terms of this Final Order, the DIP Credit Agreement and the DIP Facility Documents. Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute and are hereby deemed to be legal, valid, and binding obligations of Debtor and Debtor's estate, enforceable against Debtor and its estate in accordance with the terms of the DIP Facility Documents.

4. **Execution and Compliance with DIP Facility Documents; Conflicts**. The Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the DIP Credit Agreement and additional security agreements, deeds of trust, mortgages and financing statements) and to pay, as such become due, fees and expenses that may be required or necessary for the Debtor's performance hereunder, and

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral Final order.docx

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

9

Case: 11-48963   Doc# 128   Filed: 09/08/11   Entered: 09/08/11 16:33:17   Page 1 of 22

under the DIP Credit Agreement including, without limitation fees and other expenses described in this Final Order, in the DIP Credit Agreement (other than fees and expenses of the Debtor's professionals, which fees and expenses may only be paid upon entry of an order of this Court). Except as modified by this Final Order, the Prepetition Loan Agreements shall remain in full force and effect with respect to the Prepetition Obligations, subject to the Committee's rights under paragraph 11 of this Final Order. To the extent there exists any conflict between the Motion, this Final Order, and the terms of the Prepetition Credit Agreements or the DIP Credit Agreement, this Final Order shall govern and control.

5.      DIP Facility Superpriority Claims.  As security for the DIP Facility Obligations now existing or hereafter arising pursuant to the DIP Facility, the DIP Facility Documents, the Interim Order and this Final Order, to the extent the DIP Facility Liens do not satisfy the DIP Facility Obligations, the DIP Lender is granted an allowed super-priority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, which claim shall have priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), and/or 364(c)(1) of the Bankruptcy Code (the "DIP Facility Superpriority Claim"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claim shall be payable from and have recourse to all prepetition and postpetition property of Debtor and all proceeds thereof, provided, however, that the DIP Facility Superpriority Claim shall be subordinate to the Carve-Out to the extent specifically provided for in paragraph 9 of this Final Order.

6.      DIP Facility Liens.  As security for the DIP Facility Obligations, pursuant to sections 364(c)(2) and (c)(3) of the Bankruptcy Code, the DIP Lender shall have, and is hereby granted (effective and perfected upon the date of this Final Order and without the necessity of the execution by Debtor or the filing or recordation of deeds of trust, mortgages, security agreements, control agreements, pledge agreements, lock box agreements financing statements, or otherwise) the DIP Facility Liens.  Such liens and security interests shall not include (i) the retainers of professionals

K:\AndrpnIco's\Pld\First Day Motions\DIP Financing - Cash Collateral-FINAL.docx

10

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

appointed in the Bankruptcy Case, except to the extent those retainers are not exhausted, as more fully set forth in the DIP Credit Agreement and (ii) Avoidance Actions or the proceeds thereof. The DIP Facility Liens shall:

(a) pursuant to section 364(c)(2) of the Bankruptcy Code, be valid, perfected, enforceable and non-avoidable first priority liens on and security interests in all now owned or hereafter acquired assets and property of Debtor, that are not subject to valid, perfected, enforceable and non-avoidable liens as of the Petition Date;

(b) pursuant to section 364(c)(3) of the Bankruptcy Code be valid, perfected, enforceable and non-avoidable second priority or other junior liens on and security interests in all now owned or hereafter acquired assets and property of Debtor that are subject to valid, perfected, enforceable and non-avoidable liens in existence on the Petition Date or to valid liens in existence on the Petition Date that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code; and

(c) in the event of the occurrence of an Event of Default (as defined below), or an event that would constitute an Event of Default with the giving of notice or lapse of time, shall be subject only to the payment of the Carve-Out (as defined below).

7. <u>Authorization and Approval to Use Cash Collateral and Proceeds of DIP Facility</u>. Subject to the terms and conditions of the Interim Order and this Final Order and the other DIP Facility Documents, and to the adequate protection granted to or for the benefit of the DIP Lender as hereinafter set forth, the Debtor is authorized to (a) use the Cash Collateral and (b) request and use proceeds of the DIP Facility Loan, in each case for the types of expenditures set forth in the Budget. The Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the DIP Facility Documents and the prior written consent of the DIP Lender.

8. <u>Adequate Protection for Prepetition Secured Parties</u>. As adequate protection for the interests of the DIP Lender in the Prepetition Collateral (including Cash Collateral), the DIP Lender shall receive adequate protection as follows:

(a) <u>Replacement Liens</u>. To the extent of, and in an aggregate amount equal to, the diminution in value of such interests, from and after the Petition Date, calculated in accordance

K:\AndOpnico's\Pld\First Day Motions\DIP Financing - Cash Collateral 14b3a53.docx

11

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

with section 506(a) of the Bankruptcy Code, resulting from, among other things, the use, sale or lease by the Debtor of the Prepetition Collateral (including the use of Cash Collateral), the granting of the DIP Facility Liens, and to the Carve-Out, or the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code (collectively, "Diminution in Value"), the DIP Lender shall have pursuant to sections 361(2) and 364(c) of the Bankruptcy Code, replacement security interests in and liens upon all of the DIP Collateral (the "Replacement Liens"), which shall be (i) junior and subject to the DIP Facility Liens and (ii) junior and subject to all other properly perfected liens thereon.  The Replacement Liens shall in all cases be subject to the Carve-Out.

(b)     Adequate Protection Superpriority Claims.  To the extent of the aggregate Diminution in Value, the DIP Lender shall have, subject to the payment of the Carve-Out, an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") as provided for in section 507(b) of the Bankruptcy Code, immediately junior and subject to the DIP Facility Superpriority Claim, and payable from and having recourse to all DIP Collateral; provided, that the DIP Lender shall not receive or retain any payments, property, distribution or other amounts in respect of the Adequate Protection Superpriority Claim unless and until the DIP Facility Obligations and (without duplication) the DIP Facility Superpriority Claim have indefeasibly been paid in full in cash.

(c)     Adequate Protection Payments, etc.  The Debtor shall accrue from the Debtor when due, on a monthly basis, adequate protection payments in an amount equal to interest on the Prepetition Obligations, at the non-default rate provided for in the Prepetition Loan Documents.  Such amounts shall be immediately due and payable in the event of a default under the DIP Credit Agreement.

9.     Carve-Out.  The liens, security interests and super-priority administrative expense claims of the DIP Lender, including the DIP Facility Liens, Prepetition Liens, Replacement Liens and any Adequate Protection Superpriority Claim, shall be subject to and subordinate to a carve-out for (i) compensation and expense reimbursement (including professional fees and expenses to the extent allowed in the Guidelines allowed to a trustee in any successor Chapter 7 case; (ii) fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (iii) fees and expenses of

K:\AndrpnicosPld\First Day Motions\DIP Financing – Cash Collateral Final Order.docx

12

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

Case 1:11-bk-15613    Doc# 128    Filed: 09/08/11    Entered: 09/08/11 16:16:35    Page 12 of 22

Debtor's and the Committee's professionals in the aggregate amount set forth in the Budget (as modified below in this Paragraph 9) under "Restructuring Expenses" (the "Carve-Out"); provided, however, that any payments actually made to the Professionals after the date hereof from application of retainers or otherwise, whether under sections 330 and 331 of the Bankruptcy Code or otherwise, shall reduce the Carve-Out on a dollar-for-dollar basis, irrespective of whether such payment was made pre-Event of Default or post-Event of Default, it being expressly understood that any prepetition retainers held by Professionals shall not count against, and shall not reduce, the Carve-Out. The Carve-Out shall be free and clear of all liens, claims and encumbrances granted hereunder and shall be subject only to the allowed claims of the Professionals for such fees and expenses as may be awarded by the Bankruptcy Court under sections 327 or 328 of the Bankruptcy Code; provided, however, the Carve-Out cannot be used for the payment or reimbursement of any fees or disbursements of Debtor incurred in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief invalidating, setting aside, avoiding, subordinating, in whole or in part, the DIP Facility Obligations or the Prepetition Obligations or lien and security interest securing the DIP Facility Obligations or the Prepetition Obligations. The Budget is hereby modified such that the line item allocated to the fees of counsel to the Committee is increased by $50,000 and a line item for the fees of the financial advisor to the Committee is added in the amount of $25,000.

      10.    <u>Fees and Expenses of Professionals</u>.  So long as no Event of Default shall have occurred and be continuing or have occurred and be waived, Debtor shall be permitted to pay the compensation and reimbursement of fees and expenses allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code (but excluding fees and expenses of third party professionals employed by Committee members), as the same may be due and payable and as are otherwise permitted under this Final Order and the DIP Credit Agreement; including without limitation any payments reserved or made pursuant to the terms of the DIP Credit Agreement or any order authorizing the reservation or payment of professional fees and expenses.  Nothing contained herein is intended to constitute, nor should be construed as consent to the allowance of any fees,

K:\AndrpNico's\Pld\First Day Motions\DIP Financing - Cash Collateral (Final Order).docx

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

disbursements or expenses by any party and nothing herein shall affect the ability or right of Debtor, the DIP Lender, the Committee, the U.S. Trustee or any other party in interest to object to the allowance and payment of any amounts incurred or requested.

11.    <u>Prepetition Lien/Claim Challenge</u>.  The stipulations and admissions contained in this Final Order shall be binding upon Debtor and its estate in all circumstances.  Subject to the terms of this paragraph, the Committee shall have the earlier of (i) forty-five (45) days from the entry of the order appointing counsel for the Committee or (ii) ninety (90) days from the formation of the Committee, subject to extension of the deadline for good cause shown by application to the Court, within which to commence an adversary proceeding (collectively, a "<u>Prepetition Lien/Claim Challenge</u>") with respect to the validity, priority, extent, perfection, and enforceability of the Prepetition Liens or the Prepetition Obligations, or any other claims or causes of action against the DIP Lender relating to the Prepetition Loan.  If such a Prepetition Lien/Claim Challenge is not timely commenced within such applicable period set forth above, (a) the stipulations contained in the Interim Order and this Final Order shall be irrevocably binding on the estate, the Committee and all parties in interest (including, without limitation, a receiver, administrator, or trustee appointed in the Bankruptcy Case or in any jurisdiction), (b) the Prepetition Liens or the Prepetition Obligations and the DIP Facility Liens upon and security interests in the DIP Collateral shall be recognized and allowed as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses and perfected, (c) the Committee and any other party in interest (including, without limitation, a receiver, administrator, or trustee appointed in the Bankruptcy Case or in any jurisdiction) shall thereafter be forever barred from bringing any Prepetition Lien/Claim Challenge, and (d) the DIP Lender and its respective agents, officers, directors and employees shall be deemed released and discharged from all claims and causes of action of any kind, nature or description arising at any time immediately prior to the Petition Date, and all of Debtor's acknowledgements, releases and waivers of claims granted to or in favor of the DIP Lender relating to the Prepetition Loan in accordance with this Final Order shall be binding upon all parties-in-interest in the Bankruptcy Case and/or in any subsequently converted case under Chapter 7 of the Bankruptcy Code. Pursuant to this Final Order, the Committee shall be granted standing to commence an action

with respect to the Prepetition Lien/Claim Challenge.

12.  <u>Restrictions on Use of Proceeds</u>.  The Debtor shall use the proceeds of the DIP Facility in accordance with the DIP Facility Documents, this Final Order and the Budget: (a) to support the working capital and general corporate purposes of Debtor, (b) to make any other payments permitted to be made by the Bankruptcy Code, in this Final Order or in any other order of this Court to the extent provided for under the DIP Facility Documents or consented to by the DIP Lender as provided in the DIP Facility Documents, and (c) to pay certain fees and expenses relating to the credit facilities established under the DIP Facility Documents.

13.  <u>Restrictions on Debtor</u>.  Other than the Carve-Out, no claim having a priority superior or pari passu with those granted by this Final Order to the DIP Lender shall be granted or permitted by any order of the Bankruptcy Court heretofore or hereafter entered in the Bankruptcy Case while any portion of the DIP Facility (or refinancing thereof) or the commitment thereunder remains outstanding without the express written consent of the DIP Lender.  Except as may be expressly permitted by the DIP Credit Agreement, Debtor will not, at any time during the Bankruptcy Case, grant deeds of trust, mortgages, security interests, or liens in the DIP Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise without the express written consent of the DIP Lender.  If the Debtor incurs purchase money debt, it will do so only with the written consent of the DIP Lender.

14.  <u>Events of Default</u>.  It shall be an Event of Default by Debtor under the DIP Facility if Debtor, among other things: (i) attempts to prime the DIP Lender, (ii) a trustee, receiver or examiner is appointed, and (iii) the conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, (iv) the dismissal of the Bankruptcy Case by the Bankruptcy Court, (v) the Debtor has failed to meet any of the Borrower Milestones set forth in the DIP Credit Agreement, or (vi) there is an event of default under the DIP Credit Agreement.

15.  <u>Lien Perfection</u>.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Facility Liens and the Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any

Case 11-48963    Doc# 128    Filed: 09/08/11    Entered: 09/08/11 16:16:36    Page 15 of 22

other action to validate or perfect the DIP Facility Liens and the Replacement Liens or to entitle the DIP Facility Liens and the Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded as of the Petition Date. The Debtor shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Facility Liens and the Replacement Liens. Nothing in this Final Order shall be construed as perfecting any lien, including the Replacement Lien and the DIP Facility Lien, in the event the Bankruptcy Case is dismissed or closed.

16. <u>Modification of Automatic Stay</u>. Subject only to the provisions of the DIP Credit Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to implement the provisions of the DIP Facility Documents and this Final Order.

17. <u>Waiver of Claims under Section 506(c)</u>. So long as there is no default under the terms of this Final Order or the DIP Credit Agreement, except for the Carve-Out, no costs or expenses of administration that already have been incurred in the Chapter 11 Case shall be charged or asserted by the Debtor against DIP Lender, paid ahead of its claims or surcharged against its Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by DIP Lender in this proceeding, including, but not limited to, funding of Debtors' ongoing operations by the DIP Lender.

18. <u>Binding Effect of Interim Order and DIP Facility Documents</u>. The provisions of this Final Order and the DIP Facility Documents shall be binding upon and inure to the benefit all parties-in-interest in the Bankruptcy Case, including, without limitation, Debtor, the DIP Lender,

K:\AndJprnico's\Pld\First Day Motions\DIP Financing - Cash Collateral\11405863.docx

16

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

and the Committee and their respective successors and assigns (including, to the fullest extent permitted by applicable law, any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary hereafter appointed as a legal representative of Debtor or with respect to the property of Debtor's estate); provided, however, that DIP Lender shall have no obligation to extend any financing to any Chapter 7 trustee or similar responsible person appointed for Debtor's estate

19. <u>Survival</u>. The rights of the DIP Lender under the DIP Facility Documents or this Final Order, the provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming a plan in the Bankruptcy Case (and, to the extent not satisfied in full in cash, the DIP Facility Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code), (ii) converting the Bankruptcy Case to a chapter 7 case or (iii) dismissing the Bankruptcy Case, and the terms and provisions of this Final Order as well as the DIP Facility Superpriority Claims and the DIP Facility Liens granted to and conferred upon the DIP Lender and the protection afforded to the DIP Lender pursuant to this Final Order and the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Final Order and the DIP Facility Documents and to the maximum extent permitted by law until all of the DIP Facility Obligations shall have been paid and satisfied in full in accordance with the provisions of the DIP Credit Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claims and other protections shall remain binding on all interested parties).

20. <u>Access to Debtor</u>. Without limiting the rights of access and information afforded the DIP Lender under the DIP Facility Documents, Debtor shall permit representatives, agents and/or employees of the DIP Lender to have reasonable access to its premises and records during normal business hours (without unreasonable interference with the proper operation of Debtor's business) and shall cooperate, consult with, and provide to such representatives, agents and/or employees all such non-privileged information as they may reasonably request.

21. <u>Amendment to DIP Facility Documents</u>. The DIP Lender, with the consent of Debtor, is authorized to amend and/or modify the DIP Credit Agreement or any other DIP Facility

Case 11-48963    Doc# 128    Filed: 09/08/11    Entered: 09/08/11 16:36:36    Page 17 of 22

Document, including the Budget, without the necessity of a hearing; <u>provided</u> that any such amendments or modifications must be in writing and served upon counsel for the Committee, the U.S. Trustee and all parties who filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002; <u>provided</u>, <u>further</u> that if Debtor have not received any written objections to such amendments or modifications within five (5) Business Days after such service, Debtor shall be entitled to submit an order to the Bankruptcy Court, together with a copy of the proposed amendments or modifications and a certification that no objections have been received with the appropriate notice period.  If the Bankruptcy Court is satisfied that no objections have been received it may enter the order as proposed.

      22.    <u>Remedies upon Occurrence of Event of Default</u>.

      (a)    The Debtor's authority to borrow pursuant to the terms of this Final Order shall terminate, without notice to the Debtor or further leave of Bankruptcy Court (i) automatically on October 31, 2011, or (ii) after an Event of Default (in either case, the "<u>Termination Date</u>"), unless, following the occurrence of an Event of Default, such authority is extended by the written agreement of the Debtor and the DIP Lender, <u>provided</u>, <u>however</u>, nothing herein shall obligate the DIP Lender to make any advances after the Termination Date.  All outstanding amounts of the DIP Facility shall be due and payable on the Termination Date.

      (b)    Upon the occurrence of an Event of Default and at any time thereafter, the automatic stay imposed by Section 362(a) of the Bankruptcy Code shall be lifted with respect to the Lender at 5:00 p.m. (Pacific time) on the tenth day after written notice by the DIP Lender to the Debtor, the Debtor's counsel, the United States Trustee and counsel to the Committee, so that the DIP Lender may exercise any or all of the following rights and remedies:  (A) all the rights and remedies of a secured party under the UCC and all other applicable law, all of which rights and remedies shall be cumulative and nonexclusive to the extent permitted by law;  (B) all of the rights and remedies provided for in the Loan Documents; and  (C) without notice, sell, lease, assign, grant an option or options to purchase or otherwise dispose of the DIP Collateral and Prepetition Collateral or any part thereof in one or more parcels at public or private sale, for cash, on credit or for future delivery, and upon such other terms as Lender deems commercially reasonable.  Lender shall be

K:\AndPrnico's\Pld\First Day Motions\DIP Financing – Cash Collateral 14b3b3.docx

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

entitled to apply the proceeds of the Prepetition Collateral and the DIP Collateral in accordance with the provisions of the DIP Credit Agreement.

(c)     Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the liens, rights, remedies, benefits and protections provided to the DIP Lender under this Final Order and under the DIP Credit Agreement, including, without limitation, the DIP Facility Liens, Replacement Liens, DIP Facility Superpriority Claim and Adequate Protection Superpriority Claim granted herein, shall survive the Termination Date.

23.    <u>Reservation of Rights</u>.  Entry of this Final Order shall not be deemed to prejudice any and all rights, remedies, claims and causes of action the DIP Lender may have against third parties, and shall not prejudice the rights of the DIP Lender from and after the entry of this Final Order to seek any other relief in the Bankruptcy Case.  Entry of this Final Order shall not in any way constitute:  (a) a preclusion or a waiver of any right of the DIP Lender to file, or to prosecute if already filed, a motion for relief from stay, a motion or request for other relief, including but not limited to any adversary proceeding; (b) agreement, consent, or acquiescence to the terms of any plan by virtue of any term or provision of this Final Order; (c) a preclusion or waiver to assert any other rights, remedies or defenses available to the DIP Lender, or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses and opportunities to respond being specifically reserved by the DIP Lender; or (d) a preclusion, waiver or modification of any rights or remedies that the DIP Lender has against any other person or entity.

24.    <u>Restrictions on Additional Financing</u>.  Until entry of the Final Order, all postpetition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Facility Documents are made in reliance on this Final Order.  If an order is entered at any time in the Bankruptcy Case or in any subsequently converted case under Chapter 7 of the Bankruptcy Code (other than the Final Order) which (a) authorizes the use of Cash Collateral or the sale, lease, or other disposition of property of Debtor's estate in which the DIP Lender has a lien or security interest, except as expressly permitted hereunder or in the DIP Facility Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property

in which the DIP Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lender herein, then, in each instance described in clauses (a) and (b) above, unless the DIP Lender (as is required by the DIP Credit Agreement) shall first have given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by the DIP Lender, such order shall require that all DIP Facility Obligations first shall be indefeasibly paid in full in immediately available funds. The liens and security interests granted to or for the benefit of the DIP Lender hereunder and the rights of the DIP Lender pursuant to this Final Order and the DIP Facility Documents with respect to the DIP Facility Obligations and the DIP Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of Debtor and, if the DIP Lender shall expressly consent in writing that the DIP Facility Obligations shall not be repaid in full upon confirmation and effectiveness thereof, shall continue after confirmation and effectiveness of any such plan.

25. <u>No Modification or Stay of Interim Order</u>. If any or all of the provisions of this Final Order or the DIP Facility Agreement are hereafter modified, vacated or stayed, such modification, vacation or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by Debtor to the DIP Lender prior to the effective date of such modification, vacation or stay, or (b) the validity or enforceability of any security interest, lien, or priority authorized or created hereunder or pursuant to the DIP Facility Documents, as applicable. Notwithstanding any such modification, vacation or stay, any indebtedness, obligations or liabilities incurred by Debtor to the DIP Lender prior to the effective date of such modification, vacation or stay shall be governed in all respects by the original provisions of this Final Order; and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein with respect to all such indebtedness, obligations and/or liabilities..

26. <u>Conflicting Provisions</u>. Unless otherwise provided in this Final Order, to the extent the terms and conditions of the DIP Facility Documents are in conflict with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

Case 1:11-bk-13463    Doc# 128    Filed: 09/08/11    Entered: 09/08/11 15:16:36    Page 20 of 22

27. <u>Effectiveness</u>. Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Final Order shall (a) be immediately enforceable, and (b) not be stayed absent the grant of such stay under Bankruptcy Rule 8005 after a hearing upon notice to Debtor and the DIP Lender.

***END OF ORDER***

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral\11 FINAL 3.docx

21

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .

## COURT SERVICE LIST

**Debtor**
William Andronico, CEO
Andronico's Community Markets
1200 Irving Street
San Francisco, CA  94122

K:\Andronico's\Pld\First Day Motions\DIP Financing - Cash Collateral 11thdoc3.docx

22

FINAL ORDER (1) AUTHORIZING POST-PETITION FINANCING; (2) AUTHORIZING USE OF CASH COLLATERAL; (3) GRANTING ADEQUATE PROTECTION; (4) MODIFYING AUTOMATIC STAY . . .