and other approvals of all federal, state, local and foreign governmental and regulatory bodies obtained by Seller and currently used in connection with the operation of the Business and the Purchased Assets (the "Required Permits"), and the Required Permits are in full force and effect in accordance with their terms. To the Knowledge of Seller, Seller has not received written notice of any additional, existing or continuing violation of any Required Permit or suspension or cancellation of any Required Permit.

(b) To the Knowledge of Seller, Seller is not in violation of any law, rule, regulation, judgment, injunction, order or decree applicable to the Purchased Assets or the conduct of the Business, except for violations which would not reasonably be expected to have a Material Adverse Effect.

**3.7** Sufficiency of and Title to the Purchased Assets. Seller owns, leases or is purchasing the Purchased Assets and subject to the entry of the Sale Order and the Assumption Order, upon consummation of the Transactions, Purchaser will be vested with good and marketable title to such Purchased Assets, free and clear of all Liens to the fullest extent permissible under section 363 of the Bankruptcy Code, other than (i) Assumed Liabilities, (ii) Liens relating to any equipment financing agreement that is not determined to be a true lease, (iii) Liens in favor of Premium Assignment Corporation as more fully set forth in any Order authorizing Seller to enter into an insurance premium financing agreement with such entity, and (iv) Liens for Taxes, assessments and similar charges that are not yet due or are being contested in good faith (the "Permitted Liens");

**3.8** No Fees. Except as set forth on Schedule 3.8, Seller has not employed any broker, finder, investment banker, or other intermediary or incurred any liability for any investment banking fees, financial advisory fees, brokerage fees, finders' fees, or other similar fees in connection with this Agreement or the Transactions.

**3.9** Environmental.

(a) To the Knowledge of Seller, Seller is in compliance in all material respects with all Environmental, Health or Safety Requirements of Law applicable to any real property on which it conducts business and all activities, products and conduct of business related thereto, including, without limitation, the treatment, remediation, removal, transport, storage, release (defined below) and/or disposal of any Contaminant;

(b) To the Knowledge of Seller, Seller has not disposed (as such term is defined in the Federal Resource Conservation and Recovery Act ("RCRA")) and is not aware of any such disposition by any party of any hazardous waste (as such term is defined in RCRA) at any of the store locations in a manner that is not in compliance with the applicable Environmental, Health and Safety Requirements of Law, nor has Seller caused, contributed to, or exacerbated, nor is Seller aware of, the release (as such term is defined at 42 U.S.C. §9601(22), not including exclusions therein) of any contaminant at the store locations into the environment, including groundwater, in violation of the applicable Environmental, Health and Safety Requirements of Law.

**3.10** Insurance. Schedule 3.10 sets forth a complete list of all insurance policies and binders in place for the benefit of the Business and Purchased Assets.

**3.11** Contracts. To the extent provided in the Sale Order or the Assumption Order, the Assumed Contracts are in full force and effect and are legally binding and enforceable by and against the parties thereto, subject to the possibility that enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws now or hereafter in effect relating to creditors' rights, or principles of equity, and no condition, event or act (other than the filing of the Bankruptcy Case) is existing or has occurred that (with or without the lapse of time or the giving of notice, or both) would result in a default or right of termination thereunder.

**3.12** Subsidiaries. Seller does not have any subsidiaries and does not directly or indirectly hold equity in any other entities except an equity investment in Our Kitchen LLC and cooperative membership shares in Unified Grocers, Inc.

**3.13** WARN Act Compliance. To the Knowledge of Seller, after consultation with labor counsel, Seller has and will comply in all respects with the Worker Adjustment and Retraining Notification Act (the "WARN Act") and any other notice requirements of the WARN Act.

**4.** **Representations and Warranties of Purchaser.**

Purchaser represents and warrants to Seller as follows:

**4.1** Organization. Purchaser is a limited liability company validly existing and in good standing under the laws of the State of Delaware and has the requisite power and authority to carry on in all material respects its business as now conducted.

**4.2** Authorization. The execution, delivery and performance by Purchaser of this Agreement and the consummation of the Transactions are within the powers of Purchaser and have been duly authorized by all necessary action on the part of Purchaser. This Agreement constitutes a valid and binding agreement of Purchaser that is enforceable in accordance with its terms.

**4.3** Governmental Authorization. The execution, delivery and performance by Purchaser of this Agreement and the consummation of the Transactions by Purchaser does not require Purchaser to make any filing with, or to obtain any permit, authorization, license, consent or approval of, any Governmental Authority, except where the failure to so make or obtain would not have a Material Adverse Effect.

**4.4** Noncontravention. The execution, delivery and performance by Purchaser of this Agreement and the consummation of the Transactions does not and will not (i) violate Purchaser's articles of organization or operating agreement, or any resolution adopted by the manager of Purchaser or the member of Purchaser, (ii) violate any Laws or Orders, or (iii) except as to matters which would not have a Material Adverse Effect, violate, conflict with or result in a default (or any event which, with notice or lapse of time or both, would constitute a default) under, or give rise to any right of termination, cancellation or acceleration under, any of the

terms, conditions or provisions of any note, mortgage, other evidence of indebtedness, guarantee, license, agreement, lease or other contract, instrument or obligation to which Purchaser is a party or by which Purchaser or any of its assets may be bound.

**4.5** Litigation. There is no action, suit, investigation or proceeding pending against or, to the knowledge of Purchaser, threatened against or affecting Purchaser before any court or arbitrator or any Governmental Authority, agency or official which in any manner challenges or seeks to prevent, enjoin, alter or materially delay the Transactions.

**4.6** Certain Fees. Purchaser has not employed any broker, finder, investment banker, or other intermediary or incurred any liability for any investment banking fees, financial advisory fees, brokerage fees, finders' fees, or other similar fees in connection with this Agreement or the Transactions.

**5. Covenants of Seller.**

**5.1** Conduct of the Business. Except as may be required by the Bankruptcy Court, except for the consequences resulting from the commencement and continuation of the Bankruptcy Case, and except as may be required or contemplated by this Agreement, from the date hereof until the sooner of the Closing Date or the date of termination of this Agreement, Seller shall cause the Business to be operated in the Ordinary Course of Business, and shall not take any action inconsistent with the transactions contemplated hereby and will not permit any material transaction outside the Ordinary Course of Business in respect of the Business without the express written approval of Purchaser (which shall not be unreasonably withheld) or unless so ordered by the Bankruptcy Court after notice to Purchaser. Without limiting the generality of the foregoing, from the date hereof through the Closing Date, Seller shall:

(a) continue to meet its contractual obligations and to pay its obligations as they mature in the Ordinary Course from and after the filing of the Chapter 11 Case, other than prepetition obligations, which shall be payable only as permitted by order of the Bankruptcy Court and as set forth in the DIP Facility;

(b) use its best efforts to maintain its business intact, to retain present employees, and to preserve the good relations of its suppliers, customers and others with whom it has business relations;

(c) maintain the Purchased Assets in good working order and repair, reasonable wear and tear excepted;

(d) maintain its books and records in the usual, regular and ordinary manner, consistent with past practice;

(e) maintain levels of inventory appropriate to the needs of its business;

(f) maintain insurance with its current insurers, or other financially sound and responsible insurers, insuring (i) all property and assets owned or leased by it of an insurable nature, such insurance to be in at least such amounts and covering loss or damage from at least such risks and hazards (including business interruption insurance, extra expense coverage, use

Case: 11-48963   Doc# 184-3   Filed: 09/20/11   Entered: 09/20/11 19:05:30   Page 3 of 19

and occupancy insurance, fire, theft, burglary, property damage, and product liability insurance) on all property and assets as are currently insured against, (ii) all liabilities under a broad form general liability insurance policy and automobile insurance policy insuring for personal injury, property damage, product liability, completed operations liability, death, bodily injury, and other perils, in at least such amounts as are currently insured against, and (iii) all statutory and assumed liabilities under applicable workers' compensation laws; and

(g) pay all known or projected Taxes that shall become due and payable on or before the Closing Date and prepare and duly file all tax returns (and amendments thereto) required to be filed on or before the Closing Date.

5.2 <u>Actions Not to be Taken by Seller</u>. Seller will not:

(a) with respect to the Business acquire any fixed asset or a material amount of assets (other than inventory and supplies acquired in the Ordinary Course of Business) from any other Person or enter into any lease of any kind;

(b) subject to (g) below, sell, lease, mortgage, encumber, license or otherwise dispose of any Purchased Assets except (i) pursuant to existing contracts or commitments disclosed to Purchaser prior to the date of this Agreement, (ii) in the Ordinary Course of Business, or (iii) with the consent of the Purchaser;

(c) agree or commit to do any of the items in subsections (a) and (b) above;

(d) fail to maintain the Purchased Assets in good working order and condition in all material respects;

(e) materially alter or terminate any Assumed Contract;

(f) materially deviate from or incur any material obligations; or

(g) sell, transfer or otherwise dispose of any Inventory outside of the Ordinary Course of Business without providing Purchaser notice at least ten business days in advance of such action. If Purchaser asserts a reasonable objection, Seller shall either agree not to consummate such sale or give Purchaser written notice of Seller's election to terminate this Agreement pursuant to Section 12.1, <u>provided</u>, if Seller elects to terminate, Purchaser may cause Seller to rescind such termination notice by withdrawing its objection to such sale.

5.3 <u>Notices of Certain Events</u>. Seller shall promptly notify Purchaser of:

(a) any notice or other written communication from any Person alleging that the consent of such Person is or may be required in connection with the consummation of the Transactions;

(b) any material written communication from any Governmental Authority in connection with or relating to the Transactions;

Case: 11-48963   Doc# 184-3   Filed: 09/20/11   Entered: 09/20/11 19:05:30   Page 4 of 19

(c) the commencement of any lawsuits, claims, actions, suits, investigations or proceedings relating to Seller or the Business that Seller has knowledge or which after the date hereof are threatened or commenced against Seller, if such actions were pending on the date of this Agreement, would have been required to have been disclosed pursuant to Section 3.5; and

(d) the occurrence or existence of any other matter following the date of this Agreement that would have been required to have been disclosed pursuant to Section 3 or might otherwise constitute, or result in, a Material Adverse Effect.

**5.4** Insurance. To the extent that any insurance policies of Seller or any of its Affiliates cover any Assumed Liabilities or loss, liability, claim, damage or expense relating to any Purchased Assets with respect to events occurring that are not settled by the Closing Date, Seller shall, at the request of Purchaser, cooperate with Purchaser in submitting and pursuing such claims on behalf of Purchaser and any insurance recoveries resulting therefrom shall belong to Purchaser.

**5.5** Avoidance Actions. Seller shall not pursue any Avoidance Action against any party that Purchaser has identified to Seller as an intended supplier or party useful to the ongoing business after the Closing Date. Purchaser shall provide Seller with the list of anticipated suppliers and other parties at the Closing Date and shall be entitled to amend and supplement such list at any time during the 60 days following the Closing Date.

**5.6** Supplement to Schedules. Seller shall promptly supplement or amend any Schedule with respect to any material matter arising after the date hereof, which, if existing or occurring on the date of this Agreement, would have been required to be set forth or described in such Schedule. No supplement or amendment of a Schedule made pursuant to this Section 5.6 shall be deemed to constitute a cure of any breach of any representation or warranty made by Seller pursuant to this Agreement unless such supplement or amendment is delivered at least 2 days prior to the Closing Date and consented to in writing by Purchaser, which consent may be withheld by Purchaser in its sole discretion for any reason.

**6. Covenants of Purchaser.**

Purchaser agrees that:

**6.1** Confidentiality. Prior to the Closing Date and after any termination of this Agreement, the Confidentiality Agreement shall remain in full force and effect. After the Closing has occurred, the Confidentiality Agreement shall be terminated to the extent relating to the Purchased Assets, Assumed Liabilities and Hired Employees, and shall, with respect to any of the Excluded Assets, Excluded Liabilities and Employees other than Hired Employees, remain in full force and effect.

**6.2** Access. On and after the Closing Date and until the Bankruptcy Case is dismissed or closed, or any time during which the Bankruptcy Case is open or reopened, upon reasonable written notice, Purchaser will afford promptly to Seller and its agents reasonable access during normal business hours to Purchaser's properties, books, records and employees, to the extent necessary for financial reporting and accounting matters, employee benefits matters,

the preparation and filing of any tax returns, reports or forms, the defense of any tax audit, claim or assessment or the reconciliation of Claims in the Bankruptcy Case or to permit Seller to determine any matter relating to its rights and obligations hereunder or any other reasonable business purpose related to the Excluded Assets or Excluded Liabilities (including, without limitation, the Avoidance Actions); *provided* that any such access by Seller shall not unreasonably interfere with the conduct of the business of Purchaser. Notwithstanding the foregoing, Purchaser shall be under no obligation to provide any assistance or services to Seller in connection with any of the foregoing.

**6.3** Insurance. To the extent that any insurance policies of Seller or any of its Affiliates cover any loss, liability, claim, damage or expense relating to any Purchased Assets and such insurance policies continue after the Closing to permit claims to be made thereunder with respect to events occurring prior to the Closing, Purchaser shall cooperate with Seller in submitting and pursuing such claims.

**7.** **Covenants of Purchaser and Seller.**

Purchaser and Seller agree that:

**7.1** Efforts; Further Assurances. Subject to the terms and conditions of this Agreement, Purchaser and Seller will use their respective commercially reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under applicable laws and regulations to consummate the transactions contemplated by this Agreement; *provided, however,* Seller shall be entitled to take such actions as are required in connection with the discharge of its fiduciary duties during the Bankruptcy Case (including soliciting higher or better offers for the Purchased Assets); and provided, further, that after Closing, Purchaser shall be responsible for the cost of compliance with this Section 7.1. Seller and Purchaser agree to execute and deliver such other documents, certificates, agreements and other writings and to take such other actions as may be necessary or desirable in order to vest in Purchaser good title to the Purchased Assets or to evidence the assumption by Purchaser of the Assumed Liabilities.

**7.2** Certain Filings; Consents. Seller and Purchaser shall cooperate with one another (a) in determining whether any action by or in respect of, or filing with, any Governmental Authority is required, or any actions, consents, approvals or waivers are required to be obtained from parties to any Assumed Contracts or Intellectual Property Rights, in connection with the consummation of the Transactions and (b) in taking such actions or making any such filings, furnishing information required in connection therewith and seeking timely to obtain any such actions, consents, approvals or waivers. As promptly as practicable after the date of this Agreement: Seller shall take all actions reasonably requested by Purchaser and shall reasonably cooperate with Purchaser to obtain any and all consents and/ or approvals required from any Governmental Authority for the sale of any Purchased Asset or the assumption of any Assumed Liability (collectively, the "Consents"). Seller shall execute and deliver to Purchaser a California Department of Alcoholic Beverage Control ("ABC") Form ABC-211A for each of the liquor licenses used in the Business and cooperate with Purchaser as reasonably necessary to enable Purchaser to file for the transfer of the liquor licenses and obtain temporary permits to operate the liquor-licensed portion of the Business from the ABC prior to the Closing. Prior to

the Closing, Seller shall be responsible for the cost of complying with or obtaining such Consents, except for the costs of applying for the transfer of the liquor licenses, which shall be paid by Purchaser. After the Closing, Purchaser shall be responsible for the cost of complying with or obtaining such Consents. All such Consents shall be: (i) in form and substance reasonably satisfactory to Purchaser, (ii) shall not be subject to the satisfaction of any condition that has not been satisfied or waived and (iii) shall be in full force and effect, provided, however that issuance of permanent licenses by the ABC to Purchaser is subject to the ABC's approval process which may impose conditions upon Purchaser and will not be complete at Closing.

**7.3** <u>Examinations and Investigations</u>. From the date hereof through the Closing Date, Seller shall provide Purchaser, its employees, consultants and representatives, including its attorneys, accountants and financial advisors, access to the premises and facilities of Seller to make such investigations of the property and plant and such examination of the books and records (including all tax returns filed and those in preparation), personnel and additional financial and operating data and other information relating to Seller, the Business, the Purchased Assets, the Assumed Liabilities (including all documents, or copies thereof, listed in the Schedules, and all files, records and papers of any and all proceedings and matters listed in the Schedules) as Purchaser may reasonably request, and cause its officers, employees, consultants, agents, accountants and attorneys to cooperate fully with Purchaser and its representatives in connection with such review and examination and to make full disclosure to Purchaser of all facts affecting the financial condition and operations of Seller; provided, however, that any such investigation or examination shall not unreasonably interfere with the operations of the Business.

**7.4** <u>Negotiation With Others</u>. Seller hereby consents to Purchaser entering into confidential discussions and negotiations with any third parties that Purchaser, in its sole and absolute discretion, deems appropriate regarding this Agreement and the transactions contemplated hereby, including any of Seller's suppliers, creditors, lenders, customers, lessors, management, representatives or other parties; provided, however, that any such discussions or negotiations shall not unreasonably interfere with the operations of the Business. Seller further agrees that Purchaser may exclude representatives of Seller from any of Purchaser's discussions with such third parties, in Purchaser's discretion.

**7.5** <u>Public Announcements</u>. Prior to the Closing, neither Purchaser nor Seller shall make any public announcements or statements concerning the Transactions without the prior written consent of all parties hereto except, to the extent required by applicable law, ordered or requested by the Bankruptcy Court or otherwise reasonably necessary to the sale process. Purchaser acknowledges and agrees that Seller may provide copies of this Agreement to its employees, to parties in interest in the Bankruptcy Case, and those parties to whom Seller determines it is necessary to provide copies in connection with soliciting higher and better bids for the Purchased Assets or as otherwise necessary in connection with the Bankruptcy Case and may post this Agreement on any website established by Seller as set forth in the Bid Procedures Order. Seller also shall be entitled to file copies with the Bankruptcy Court or as otherwise required by law and shall be entitled to publish notice of the contemplated Transactions. After the Closing, Purchaser may make any public announcement or statements concerning the Transaction without the prior consent of Seller.

7.6 Bankruptcy Issues.

(a) Bid Procedures. At the Closing of the sale to a Successful Puchaser other than Purchaser the Successful Purchaser shall pay to Purchaser the Break-Up Fee. The Break-Up Fee was a material inducement for, and a condition of, Purchaser entering into this Agreement. The Break-Up Fee shall be treated as an administrative expense claim in the Bankruptcy Case payable solely from and secured by a first priority lien o n sale proceeds and any Sale Deposit under Section 364(d) of the Bankruptcy Code.

(b) Sale Motion and Assumption Motion. Seller shall file the Sale Motion and Assumption Motion upon entry of the Bid Procedures Order.

7.7 Efforts to Consummate. Subject to the terms and conditions of this Agreement, the parties hereto shall take or cause to be taken all reasonable action and do or cause to be done all things reasonably necessary, proper or advisable under all applicable legal requirements to consummate, as soon as reasonably practicable, the transactions contemplated hereby.

8. **Tax Matters.**

8.1 Tax Cooperation. Purchaser and Seller agree to furnish or cause to be furnished to each other, upon request, as promptly as practicable, such information and assistance relating to the Business and the Purchased Assets (including access to books and records) as is reasonably necessary for the preparation and filing of all Tax returns, the making of any election relating to Taxes, the preparation for any audit by any Taxing Authority, and the prosecution or defense of any claim, suit or proceeding relating to any Tax. Seller and Purchaser shall cooperate with each other in the conduct of any audit or other proceeding relating to Taxes involving the Purchased Assets or the Business.

8.2 Allocation of Sales/Transfer Taxes. Purchaser shall be responsible for any sales, use, transfer, stamp or similar Taxes directly arising out of the transfer of the Purchased Assets.

8.3 Income Tax Consequences; Pre-Closing Sales Tax. Seller shall be responsible for any federal or California net income taxes arising from the sale of the Purchased Assets to Purchaser as well as any California sales taxes due for periods prior to the Closing. Notwithstanding the foregoing, such taxes may be paid in whole or part from the Tax Reserve.

8.4 Property Taxes. All Property Taxes for a Tax period which includes (but does not end on) the Closing Date shall be the sole responsibility of Purchaser and shall be paid by Purchaser as and when payment therefore is due.

9. **Employee Matters.**

9.1 Employees and Offers of Employment. As of the Closing Date, in order to comply with all obligations under the WARN Act, Purchaser shall offer employment to the current employees of the Seller so that less than 50 of those employees would suffer an employment loss. At this time Purchaser anticipates that it will offer employment to substantially all current employees of Seller. The terms of such employment offers will be as determined by Purchaser in its sole and absolute discretion. Any benefits accruing under the

74117-0002/LEGAL21567744.9 -21-
Case: 11-48963    Doc# 184-3    Filed: 09/20/11    Entered: 09/20/11 19:05:30    Page 8 of 19

current employee benefit plans will terminate and all benefits provided to the Hired Employees will begin to accrue under the Purchaser's replacement plans, as determined by Purchaser in its sole and absolute discretion, from and after the Closing Date. Notwithstanding that Purchaser agrees to comply with the terms of this Section, any Hired Employees hired will be hired on an at-will basis. Purchaser shall have no obligation after the Closing to continue to retain these employees if in Purchaser's sole judgment the Hired Employees are not suitable for Purchaser's operation of the Business. Nothing in this Section 9.1 shall, however, create any rights in favor of any person not a party hereto, including Employees of the Business or any Hired Employees, or constitute an employment agreement or condition of employment for any Employee of Seller or any Retained Employee.

**9.2** Employee Records.

(a) The Parties recognize that the continued employment of the Hired Employees is significant to the business interests of both Purchaser and Seller. As such, the orderly transfer of employment relationships is important to the Parties and the Parties will use its best efforts to accomplish the transition with as little disruption to the Business as possible.

(b) Purchaser shall maintain employee records transferred to Purchaser hereunder with respect to Hired Employees for a reasonable period of time from the Closing Date and during that period will afford Seller reasonable access to such records during Purchaser's normal business hours. Purchaser shall maintain the confidentiality of such records and limit access thereto in accordance with applicable law and in a manner consistent with Purchaser's treatment of its employee records.

**10. Closing Conditions.**

**10.1** Conditions to Obligations of Purchaser and Seller. The obligations of Purchaser and Seller to consummate the Closing are subject to the satisfaction of the following conditions:

(a) Each of the representations and warranties of the Seller set forth in Article 3 shall be true and correct in all material respects as of the Closing Date (or on the date when made in the case of any representation and warranty which specifically relates to an earlier date) with the same force and effect as though made on and as of the Closing Date (or such earlier date), and Purchaser shall have received a certificate signed by an authorized officer of the Seller, dated the Closing Date, to the foregoing effect.

(b) On or before October 13, 2011, the Bankruptcy Court shall have entered the Sale Order and the Assumption Order in the Bankruptcy Case, authorizing the Transactions and approving this Agreement under sections 105(a), 363 and 365 of the Bankruptcy Code, and as of the Closing Date the Sale Order and Assumption Order shall be in full force and effect and shall not have been stayed, vacated or reversed. The Sale Order and Assumption Order shall be in substantially the form attached hereto as Exhibits A and B, respectively, and shall:

(i) waive any stay that would otherwise be applicable pursuant to Bankruptcy Rules 6004(g) or 6006(d);

(ii) provide that the sale of the Purchased Assets shall be free and clear

74117-0002/LEGAL21567744.9                -22-
Case: 11-48963    Doc# 184-3    Filed: 09/20/11    Entered: 09/20/11 19:05:30    Page 9 of 19

       of all Liens and Claims, other than Permitted Liens and Assumed Liabilities, to the fullest extent allowed by applicable law;

    (iii) provide that the Transactions are approved and that Seller's execution, delivery and performance of the documents related to the Transactions are approved; and

    (iv) provide that, except as contemplated by Section 2.4 of this Agreement, Seller is authorized to assume and assign the Assumed Contracts and Intellectual Property Rights pursuant to section 365 of the Bankruptcy Code, notwithstanding any provisions that restrict the assignability thereof.

  (c) No injunction, stay or similar order or decree, issued by any court, tribunal or governmental entity, shall be in effect that restrains, enjoins, stays or prohibits the consummation of the Transactions.

  **10.2** <u>Conditions to Obligations of Purchaser</u>. The obligation of Purchaser to consummate the Closing is subject to the satisfaction (or waiver by Purchaser) of the following further conditions:

  (a) Seller shall have performed in all material respects all of its obligations hereunder required to be performed by Seller on or prior to the Closing Date.

  (b) The representations and warranties of Seller contained in this Agreement shall be true and correct at and as of the Closing Date, as if made at and as of such date (or to the extent such representations and warranties speak as of an earlier date, they shall be true and correct as of such earlier date).

  (c) Seller shall have provided Purchaser with a certificate that there shall have been no Material Adverse Effect relating to the Business or Seller from the Petition Date through the Closing.

  (d) Purchaser shall have received all documents it may reasonably request relating to the Closing (as set forth in Section 2.8).

  (e) The Bid Procedures Order, the Assumption Order and Sale Order shall have been obtained as set forth herein.

  **10.3** <u>Conditions to Obligations of Seller</u>. The obligation of Seller to consummate the Closing is subject to the satisfaction (or waiver by Seller) of the following further conditions:

  (a) (i) Purchaser shall have performed in all material respects all of its obligations hereunder required to be performed by it at or prior to the Closing Date, and (ii) the representations and warranties of Purchaser contained in this Agreement shall be true and correct in all respects at and as of the Closing Date with the same effect as though made at and as of the Closing Date (other than any representation or warranty that expressly relates to a specific date,

which representations and warranties shall be true and correct in all respects on the date so specified).

(b) Seller shall have received all documents it may reasonably request relating to the existence of Purchaser and the authority of Purchaser for this Agreement, all in form and substance reasonably satisfactory to Seller.

(c) The Bid Procedures Order, the Assumption Order and Sale Order shall have been obtained as set forth herein.

(d) Purchaser shall have funded the Carve-Out Account as provided herein.

**11.  Survival.**

The Parties hereto agree that all representations and warranties contained in this Agreement or in any certificate or other writing delivered by Seller or Purchaser in connection herewith or covenants and agreements contained in this Agreement or in any certificate or other writing delivered by Seller or Purchaser in connection herewith that by their terms are to be performed before Closing, shall terminate upon Closing, and neither Seller nor Purchaser shall have any liability to the other for any alleged breach of such warranties and representations or pre-Closing covenants or agreements if the Closing occurs. The covenants and agreements contained in this Agreement or in any certificate or other writing delivered by Seller or Purchaser in connection herewith that by their terms are to be performed after Closing, shall terminate upon lapse of the applicable statute of limitations. Notwithstanding the foregoing, if any representation or warranty is discovered by a Party after Closing to be false and made by the other Party with knowledge of such falsity, the aggrieved Party shall retain all rights and remedies that it would have under applicable law for such breach. The parties hereto agree that the covenants and agreements contained in this Agreement to be performed at or after the Closing shall survive the Closing hereunder, and each party hereto shall be liable to the other after the Closing for any breach thereof.

**12.  Termination.**

**12.1**  Grounds for Termination. This Agreement may be terminated at any time prior to the Closing:

(a) by mutual written agreement of Seller and Purchaser;

(b) by Purchaser, if any condition set forth in Section 10.1 has not been satisfied as provided therein or any condition set forth in Section 10.2 has not been satisfied by October 21, 2011, (or October 31, 2011 in accordance with the provisions of the Bid Procedures Order);

(c) by Purchaser, if Seller has breached any of its obligation under this Agreement, provided that if such breach is capable of being cured, Purchaser shall have given Seller ten (10) days written notice to cure such breach and Seller shall have failed to cure such breach within that ten (10) day period;

Case: 11-48963    Doc# 184-3    Filed: 09/20/11    Entered: 09/20/11 19:05:30    Page 11 of 19

(d) by Seller, if any condition set forth in Section 10.1 has not been satisfied as provided therein or any condition set froth in Section 10.2 has not been satisfied by October 21, 2011 (or October 31, 2011 in accordance with the provisions of the Bid Procedures Order);

(e) by Seller, if Purchaser has breached any of its obligation under this Agreement, provided that if such breach is capable of being cured, Seller shall have given Purchaser ten (10) days written notice to cure such breach and Purchaser shall have failed to cure such breach within that ten (10) day period;

(f) by Purchaser, if (i) the Bid Procedures Order is not entered by the Bankruptcy Court on or before September 8, 2011 or (ii) the Sale Order and the Assumption Order are not entered by the Bankruptcy Court on or before October 13, 2011;

(g) by Purchaser, if (i) the Bankruptcy Case is converted into a Chapter 7 proceeding, (ii) Seller files a plan of reorganization that excludes, prohibits or does not provide for the consummation of the Transactions with Purchaser, or (iii) if the Bankruptcy Case is dismissed;

(h) by Purchaser, if some Person other than Purchaser is the Successful Purchaser and the sale of substantially all the Purchased Assets to such Successful Purchaser is closed; or

(i) by Seller, (i) under Section 5.2(g) of this Agreement; or (ii) if Seller executes a definitive agreement with a third party (other than Purchaser) for the acquisition of all or substantially all the Purchased Assets pursuant to the terms of the Bid Procedure Order, and the Bankruptcy Court enters an order in the Bankruptcy Case approving such definitive agreement.

The Party desiring to terminate this Agreement pursuant to this Section 12.1 (other than pursuant to Section 12.1(a)) shall give notice of such termination to the other Party in accordance with Section 13.1.

**12.2** <u>Effect of Termination</u>. If this Agreement is terminated as permitted by Section 12.1, such termination shall be without liability of any Party (or any stockholder, director, officer, employee, agent, consultant or representative of such Party) to the other Party to this Agreement except as otherwise expressly provided in this Agreement (including, without limitation, in Section 7.6(a)). The provisions of Sections 6.1, 7.5, 7.6(a), 12.2, 12.3, 13.1, 13.4, 13.5, 13.6, and 13.10 shall survive any termination hereof pursuant to Section 12.1.

**12.3** <u>Expenses</u>. After the date of this Agreement, except for the payment of the Break-Up Fee pursuant to Section 7.6(a) and the Bid Procedures Order, all costs and expenses incurred in connection with this Agreement shall be paid by the Party incurring such cost or expense.

13. **Miscellaneous.**

    **13.1** <u>Notices</u>. All notices, requests and other communications to any Party hereunder shall be in writing (including facsimile transmission) and shall be given,

        if to Purchaser, to:

            Renwood Andronico Lending 1, LLC
            13355 Noel Road, Suite 1825
            Dallas, TX  75240
            Attn:  Scott Lavie
            Fax No.:  (714) 227-1292
            Email:  scott.lavie@renovocap.com

        With a copy to:

            Jeanette L. Thomas
            Perkins Coie LLP
            1120 NW Couch Street, 10th Floor
            Portland, OR 97209
            Fax No.:  (503) 727-2000
            Email:  jthomas@perkinscoie.com

        if to Seller, to:

            Andronico's Markets, Inc.
            1200 Irving Street
            San Francisco, CA 94122
            Attn: Bill Brinkman,
            Fax No.:  (415) 651-9750
            Email:  bill.brinkman@bebllc.com

        With a copy to:

            Murray & Murray
            19400 Stevens Creek Boulevard
            Suite 200
            Cupertino, CA 95014-2548
            Attn:  John Walshe Murray, Esq.
            Fax No.:  (650) 852-9244
            Email:  jwmurray@murraylaw.com

All such notices, requests and other communications shall be deemed received on the date of receipt by the recipient thereof if received prior to 5:00 p.m. in the place of receipt and such day is a Business Day in the place of receipt. Otherwise, any such notice, request or communication shall be deemed not to have been received until the next succeeding Business Day in the place of receipt.

    **13.2** <u>Waivers</u>. No failure or delay by any Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or

privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

13.3    Successors and Assigns. The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns. No Party may assign, delegate or otherwise transfer any of its rights or obligations under this Agreement without the written consent of the other Party. Notwithstanding the foregoing, Purchaser may assign all or any portion of its rights and obligations hereunder to one or more of its subsidiaries or affiliates, simultaneously with the Closing, provided, however, any assignment of any Assumed Contracts shall only be to the extent permitted under section 365 of the Bankruptcy Code.

13.4    Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of California and any applicable provisions of the Bankruptcy Code, without regard to the principles of conflicts of law that would provide for application of another law.

13.5    Jurisdiction.

(a)    Prior to the closing of the Bankruptcy Case or upon the reopening of the Bankruptcy Case if it is closed, except as otherwise expressly provided in this Agreement, the Parties hereto agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the Transactions shall be brought exclusively in the Bankruptcy Court, and each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the Bankruptcy Court or that any such suit, action or proceeding which is brought in the Bankruptcy Court has been brought in an inconvenient forum. Process in any such suit, action or proceeding may be served on any Party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court. Without limiting the foregoing, each Party agrees that service of process on such Party as provided in Section 13.1 shall be deemed effective service of process on such Party.

(b)    Upon the closing of the Bankruptcy Case, except as otherwise expressly provided in this Agreement, the Parties hereto agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the Transactions may be brought in any court having subject matter jurisdiction over such suit, action or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of California, and each of the Parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum. Process in any such suit, action or proceeding may be served on any Party anywhere in the world, whether within or without the jurisdiction of any such court. Without limiting the

74117-0002/LEGAL21567744.9                -27-
Case: 11-48963    Doc# 184-3    Filed: 09/20/11    Entered: 09/20/11 19:05:30    Page 14 of 19

foregoing, each Party agrees that service of process on such Party as provided in Section 13.1 shall be deemed effective service of process on such Party.

**13.6** <u>Waiver of Jury Trial</u>. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE TRANSACTIONS TO THE FULLEST EXTENT ALLOWABLE BY LAW.

**13.7** <u>Third Party Beneficiaries</u>. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement.

**13.8** <u>Time is of the Essence</u>. Due to the nature of the Business, time is of the essence with respect to the Closing of the Transactions. Seller and Purchaser will use their commercially reasonable efforts to proceed to sale as expeditiously as possible, subject to the notice requirements of the Bankruptcy Code and the time demands of the Bankruptcy Court.

**13.9** <u>Severability</u>. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the Transactions is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the Transactions are consummated as originally contemplated to the greatest extent possible.

**13.10** <u>Entire Agreement; Amendments; Counterparts</u>. This Agreement (including the Schedules and Exhibits hereto) set forth the entire agreement among the Parties with respect to the subject matter hereof supersedes any prior agreement or understanding between the Parties with respect to the subject matter hereof (including, without limitation, the Letter of Intent) and may be amended only by a writing executed by Purchaser and Seller. This Agreement may be executed in counterparts, each of which when taken together shall constitute an original.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**SELLER:**

**ANDRONICO'S MARKETS, INC.**

By: _____
Name: William J. Andronico
Title: Chief Executive Officer


**PURCHASER:**

**RENWOOD ANDRONICO LENDING 1, LLC**

By: _____
Name: Mark Barbeau
Title: Manager

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**SELLER:**

**ANDRONICO'S MARKETS, INC.**

By: _____
Name: William J. Andronico
Title: Chief Executive Officer

**PURCHASER:**

**RENWOOD ANDRONICO LENDING I, LLC**

By: *[signature]*
Name: Mark Barbeau
Title: Manager

74117-0002/LEGAL21567744.9

-29-

Case: 11-48963   Doc# 184-3   Filed: 09/20/11   Entered: 09/20/11 19:05:30   Page 17 of 19

# Exhibit A

**Sale Order**

See attached

# Exhibit B

# Assumption Order

See attached