DAVID A. HONIG (SBN: 160721)
dhonig@winston.com
JOHN D. FREDERICKS (SBN: 168309)
jfredericks@winston.com
MARCUS O. COLABIANCHI (SBN: 208698)
mcolabianchi@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

Attorneys for
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>ANDRONICO'S MARKETS, INC.,<br>A California Corporation, aka Andronico's Community Markets,<br><br>Debtor,<br><br>1200 Irving Street<br>San Francisco, CA 94122<br><br>Employer Tax I.D. No.: 94-1307395 | **Case No. 4:11-bk-48963-EDJ-11**<br><br>Chapter 11<br><br>Date: October 13, 2011<br>Time: 9:00 a.m.<br>Place: United States Bankruptcy Court<br>1300 Clay Street, Courtroom 215<br>Oakland, CA 94612<br>Judge: Honorable Edward D. Jellen |

## LIMITED OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION BY DEBTOR TO SELL CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS

The Official Committee of Unsecured Creditors ("Committee") appointed in the chapter 11 case of the above-captioned debtor (the "Debtor") hereby responds to the Motion by Debtor to Sell Certain Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests ("Sale Motion").

## I. INTRODUCTION.

The Debtor proposes to sell substantially all of its assets to Renwood Andronico Lending 1, LLC ("Renwood"), or another affiliate of Renovo Capital, LLC, the Debtor's senior prepetition

lender and DIP lender ("Renovo"). The Committee generally supports the proposed Sale,[1] but objects to certain material aspects of the Purchase Agreement, as described below.

A. <u>Potential Abuse of the Chapter 11 Process</u>: Closing of the Sale may leave the Debtor administratively insolvent to an extent that cannot be determined until at or after the Closing. The unfunded administrative expenses may amount to as much as approximately $1 million. If that is the case, the Sale will improperly <u>preclude</u> the confirmation of any chapter 11 plan.

Renovo's DIP Facility constitutes the Debtor's sole source of postpetition financing. The DIP Facility provides a budget for some, but not all, potential administrative expenses of the estate. The Purchase Agreement calls for the Debtor to sell all of its store locations (i.e., its sole source of operating revenue), and permits Renwood to pay some, but not all, priority administrative expenses that are not paid under the DIP budget. Upon the Closing, the DIP Facility will be terminated, potentially leaving substantial administrative expenses with no source of payment.

To confirm a chapter 11 plan, the Debtor must demonstrate that all administrative expenses will be paid in full, in cash, on or before the effective date of the plan. If consummation of the Purchase Agreement leaves the Debtor unable to pay all of its administrative expenses, then the Sale will make it impossible for the Debtor to comply with this rule, and the Sale will inevitably be followed by conversion of the case to a case under chapter 7.

Unless all administrative expenses are funded under the DIP Facility or the Purchase Agreement, the Sale will represent an improper use of the chapter 11 process to enact a rapid asset sale for the benefit of a secured creditor, with no prospect of complying with the fundamental requirements of chapter 11. Such a Sale will be worse than a sub rosa plan; instead of circumventing or dictating the terms of an eventual chapter 11 plan, the Sale will make it impossible for any plan to be confirmed. The Sale will be, in fact, a sub rosa chapter 7 liquidation.

The Committee submits that the Sale should not be approved unless the Debtor, Renwood, and any affected administrative claimants reach clear agreement for the funding of all allowed administrative expenses in the case.

---

[1] Capitalized terms used herein without definition shall have the meanings assigned to them in the Sale Motion and/or the Purchase Agreement referenced therein.

Case: 11-48963  Doc# 284  Filed: 10/10/11  Entered: 10/10/11 18:40:07  Page 2 of 8

B. <u>Renwood's "Credit Bid" on Unencumbered Assets</u>: Under the Purchase Agreement, Renwood proposes to acquire through a credit bid not only assets in which Renovo holds properly attached and perfected security interests, but other valuable assets in which Renovo holds no security interest whatsoever, including the Debtor's leasehold interests in the Shattuck Avenue and University Avenue stores (collectively, the "<u>Unencumbered Leaseholds</u>") and the Debtor's equity interests in the Unified Western Grocers cooperative (the "<u>Co-Op Interests</u>," and collectively with the Unencumbered Leaseholds, the "<u>Unencumbered Assets</u>").

On October 10, 2011, the Committee commenced a separate adversary proceeding to avoid and set aside for the benefit of the estate Renovo's asserted liens in the Unencumbered Assets (the "<u>Renovo Adversary Proceeding</u>," A.P. No. 11-04308) by filing a Complaint to Determine Validity, Priority or Extent of Liens (the "<u>Renovo Complaint</u>").

The values of the Unencumbered Assets have yet to be established, but likely amount in the aggregate to over $1 million. Notwithstanding the terms of the Final DIP Order, or Renwood's asserted right to fund portions of the Purchase Price based upon amounts advanced under the DIP Facility and the Pre-Petition Debt interchangeably, Renwood must first satisfy amounts due under the DIP Facility by credit bidding on properly perfected collateral. As noted in the supporting Declaration of Matthew D. Covington filed concurrently herewith (the "<u>Covington Declaration</u>"), the value of all Purchased Assets, excluding the value of the Unencumbered Assets, substantially exceeds the amount outstanding under the DIP Facility. Under the equitable doctrine of marshaling, this Court should require Renwood to pay cash to the estate for the Unencumbered Assets.

C. <u>Disposition of Avoidance Actions</u>: The Purchase Agreement permits Renwood to determine in its sole discretion whether the Debtor may pursue certain avoidance claims against third parties who continue to do business with Renwood after the Closing. Such determinations should not be made solely by Renwood without the concurrence of the Debtor, the Committee, or another estate representative.

## II. A SALE MAY NOT PRECLUDE THE CONFIRMATION OF A CHAPTER 11 PLAN.

Renovo has agreed to pay most, but not all, potential administrative expenses of the estate through a combination of advances under the DIP Facility and cash payments pursuant to the

Purchase Agreement. However, the Sale Motion and the Purchase Agreement leave open the possibility that substantial administrative expenses (including, without limitation, amounts payable to or for the benefit of the Debtor's employees, and amounts payable to estate-funded professionals), will not be funded by Renovo and cannot be paid from operational cash flow prior to Closing. To the extent the Sale leaves the Debtor administratively insolvent, the very structure of the Sale and its interaction with the DIP Facility will preclude the confirmation of any chapter 11 plan, and should not be approved.

The Sale Motion requests that the Sale be free and clear of liens, claims, encumbrances and other interests, "including, without limitation, any claims relating or arising out of any collective bargaining agreement, health or welfare benefit plan or pension plan …." Sale Motion ¶ 3; id. fn. 9 ("Renwood does not intend to assume the Debtor's Collective Bargaining Agreement ("CBA") .. [and] any outstanding employee obligations remaining at the Closing will remain with the Debtor." Under the Purchase Agreement, Renwood expressly disclaims any obligation arising under such labor-related agreements. Purchase Agreement §2.3(d).

The DIP Facility and the Purchase Agreement, collectively, do not provide for the complete satisfaction of labor-related and professional administrative claims asserted to date, to say nothing of others that may be reasonably anticipated. Sale Motion pp. 14-15. The Purchase Agreement itself does not permit a reader to determine exactly which administrative expenses will and will not ultimately be paid by Renovo. Purchase Agreement §§ 2.3, 2.5.[2] But the Debtor has advised the Committee that the Closing (and concomitant termination of the DIP Facility) may leave substantial outstanding amounts, potentially up to approximately $1 million in the aggregate, payable in connection with (a) health benefit and pension plans related to the CBA, (b) certain professional retentions not addressed in the budget associated with the Final DIP Order, and (c) potentially, other administrative claims not yet identified. Moreover, Renovo has advised the Committee that the disposition of these potential administrative claims may not be determined until the Closing Date or,

---

[2] The Purchase Agreement also calls for Renovo to fund "[a]ll liabilities first arising from the operation of the Business or the ownership of the Purchased Assets by Purchaser from and after the Petition Date to the extent not previously paid, including any previously unpaid 503(b)(9) Claims." Purchase Agreement § 2.2(f). This passage, in conjunction with other provisions of the Purchase Agreement, provides more confusion than comfort.

in some instances, thereafter.

While it is well settled that a debtor may sell assets, including substantially all of its assets, prior to the filing of a chapter 11 plan, that right is not without limits. Courts have identified a number of factors that should be evaluated in determining whether to permit a debtor to sell assets prior to proposing a plan of reorganization. *See, e.g., In re Lionel Corporation,* 722 F. 2d 1063, 1071 (2nd Cir. 1983); *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir. 1983); *In re Work Recovery,* 202 B.R. 301 (Bankr. D. Az. 1996). Among the factors that should be considered is "the effect of the proposed disposition on future plans of reorganization." *Lionel* at 1071. In that connection, the Court should consider whether "approval of the proposed transaction [will] effectuate a de facto reorganization in such a 'fundamental fashion' as to render creditors' rights under the other provisions of chapter 11 meaningless." *Work Recovery* at 304.

The proposed Sale may go beyond a sub rosa plan in the traditional sense. It does not merely dictate the terms of any future reorganization. Rather, the proposed Sale may preclude confirmation of <u>any</u> chapter 11 plan whatsoever.

To confirm a chapter 11 plan, the Debtor must demonstrate that all administrative expenses will be paid in full, in cash, on or before the effective date. 11 U.S.C. ¶¶ 502(f), 503(b), 1129(a)(9)(A). If consummation of the Purchase Agreement leaves the Debtor unable to pay all of its administrative expenses, then the Sale will guarantee that the provisions of section 1129(a)(9) cannot be satisfied, no chapter 11 plan can be confirmed, and the Sale will inevitably be followed by conversion of the case to a case under chapter 7.

As in *Braniff,* the proposed Sale will dispose of virtually all of the Debtor's assets, leaving "little prospect or occasion for further reorganization." *Braniff* at 940. Under the circumstances of this case, the Committee would be prepared to accept that outcome, as far as it goes. But the Committee respectfully submits that the Sale should not be approved if it also, by design, renders the estate administratively insolvent.

### III. RENOVO CANNOT "CREDIT BID" ON THE UNENCUMBERED ASSETS.

The Purchase Agreement ostensibly permits Renwood to credit bid, using any combination of pre-and post-petition debt, on any or all Purchased Assets - including Unencumbered Assets in

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

which Renovo holds neither attached nor perfected prepetition security interests. See Renovo Complaint ¶¶ 10-18.

The Unencumbered Assets may have substantial value. Despite the Debtor's assertions in connection with the Sale Motion, the Unencumbered Leases appear to be priced below market, transferable under section 365 of the Bankruptcy Code, and valuable to the estate. Covington Declaration ¶¶ 4-6. The Co-Op Interests also have value. Id. ¶ 7. Such value should be preserved for the benefit of the estate, and if Renwood wishes to acquire the Unencumbered Assets, it should pay for them in cash.

Section 363(k) of the Bankruptcy Code does not enable Renwood to "credit bid" unsecured claims. Neither the existence of the DIP Facility nor the terms of the Purchase Agreement can remedy this limitation. Renwood must first satisfy amounts due under the DIP Facility by credit bidding on properly perfected collateral.

Furthermore, Renwood should be precluded from engrossing the value of the Unencumbered Assets without separately compensating the estate, because the standards for equitable marshaling are satisfied here. "Where one creditor has an interest in two properties of a debtor and a second creditor has a junior interest in only one of these properties, a court may invoke the doctrine of marshaling of assets to require the senior creditor to proceed first against the fund on which she has an exclusive lien, leaving the junior creditor a potential fund to satisfy her claim." *In re Brazier Forest Products, Inc.,* 921 F.2d 221, 223 (9th Cir. 1990) (citing *Meyer v. United States,* 375 U.S. 233, 236–38 (1963)).

"A bankruptcy court can invoke the doctrine of marshaling since it applies equitable principles." *Victor Gruen Assoc., Inc. v. Glass,* 338 F.2d 826, 829 (9th Cir. 1964) (internal citations omitted). "The specifics of the doctrine as set out in California Civil Code, sections 2899 and 3433, govern with regard to bankruptcy proceedings arising in California. This is true since, in bankruptcy proceedings, the validity, nature and effect of liens are governed by the law of the state where the property is situated." Id.

California law has codified the doctrine of marshaling. "Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is

entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons." Cal Civ. Code § 3433; see Cal. Civ. Code § 2899 (sequence of resort to different funds).

Requiring Renwood first to credit bid amounts due under the DIP Facility, based on properly perfected collateral, would not impair its interests. The assets encumbered by Renovo's validly perfected liens are worth far more than the DIP amount outstanding.

In determining that the value of the Purchased Assets, <u>excluding</u> the potential value of the Unencumbered Assets, substantially exceeds the amount outstanding under the DIP Facility, the Committee's financial advisor has observed that Renwood's bid (approximately $16 million for all Purchased Assets) indicates that Renwood itself values the Purchased Assets <u>other</u> than the Unencumbered Assets in an amount that exceeds the DIP Balance by at least $8,730,074. Covington Declaration ¶¶ 8-9. Evidence provided by other parties' offers suggests a valuation in a similar range. Id. ¶¶ 10-11. In light of this analysis, the Court should require Renwood to pay cash to the estate for the Unencumbered Assets.

## IV. AVOIDANCE ACTIONS SHOULD REMAIN IN THE ESTATE'S PURVIEW.

The Purchase Agreement authorizes Renwood to "designate" the disposition of substantially all avoidance actions, including those that remain with the estate and are not acquired by Renwood under the agreement. The purpose of this provision may be laudable – to protect from avoidance attack certain vendors and other parties that continue to do business with Renwood after the Closing – but it is not appropriate for Renwood to make that determination in its sole discretion. *See In re Allegheny Health, Education and Research Found.*, 233 B.R. 671, 676 (Bankr. W.D. Pa. 1999) (section 542(a) action could not have been obtained through a sale because "such a cause of action is not significantly unlike other statutorily-created actions under Chapter 5 of the Bankruptcy Code, which actions may not be assigned unless, consistent with 11 U.S.C. § 1123(b)(3)(B), such an assignment is to a representative of a bankruptcy estate for the sole purpose of pursuing said cause of action"); *In re Sapolin Paints, Inc.,* 11 B.R. 930, 937 (Bankr. E.D. 1981) (it is a "well-settled principle that neither a trustee in bankruptcy, nor a debtor-in-possession, can assign, sell, or

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

1 otherwise transfer the right to maintain a suit to avoid a preference.") The Debtor, the Committee, or such other estate representative as may remain on the scene after Closing should actively participate in the process to ensure that the estate is not deprived of valuable assets.

## V. THE RENOVO WAIVERS CANNOT BIND NON-DEBTOR FIDUCIARIES.

Under the Purchase Agreement, (i) Renwood will acquire, as part of the Purchased Assets, all Avoidance Actions that might be commenced by the Debtor against Renwood or its affiliates, and (ii) Renwood will waive any claims it may have against the Debtor's estate, and "in consideration for such waiver," the Debtor will waive any claims it might have against Renwood or any of its affiliates. These provisions, on their face, appear to constitute improper releases of Renwood and its affiliates from potential claims by the estate, without any valuation of those claims. Nor is there any consideration for the releases, because "the proposed Sale is not anticipated to provide funds for distribution to creditors[.]" Sale Motion ¶ 22.

The Final DIP Order may render the point moot as regards the Debtor itself. However, the Committee has commenced the Renovo Adversary Proceeding to challenge the extent, priority and validity of Renovo's asserted interests in the Unencumbered Assets. The issues raised by the Renovo Adversary Proceeding might not be resolved prior to Closing.

Accordingly, any order of the Court approving the Sale should provide that (a) to the extent the Committee later prevails on its claims in the Renovo Adversary Proceeding, Renwood must satisfy the applicable portion of its "credit bid" in cash, and (b) the above release provisions are not binding on the Committee or any chapter 11 or chapter 7 trustee later appointed.

Dated: October 10, 2011

WINSTON & STRAWN LLP

By: /s/ Marcus O. Colabianchi
David A. Honig
John D. Fredericks
Marcus O. Colabianchi
Attorneys for
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS