Steven M. Hedberg, Esq. (admitted *pro hac*)
Shedberg@perkinscoie.com
Jeanette L. Thomas, Esq. (admitted *pro hac*)
Jthomas@perkinscoie.com
Farschad Farzan, Esq.
Ffarzan@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209
Telephone: (503) 727-2000
Fax: (503) 727-2250

Attorneys for Renwood Andronico Lending 1, LLC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>**ANDRONICO'S MARKETS, INC.,**<br>A California Corporation, aka<br>Andronico's Community Markets<br><br>Debtor.<br><br>1200 Irving Street<br>San Francisco, CA 94122<br><br>Employer Tax I.D. No.: 94-1307395 | Case No. 11-48963-EDJ-11<br><br>Chapter 11<br><br>Date: October 13, 2011<br>Time: 9:00 a.m.<br>Place: United States Bankruptcy Court<br>1300 Clay Street, Courtroom 215<br>Oakland, CA 94612<br><br>Judge: Honorable Edward D. Jellen |

**RENWOOD ANDRONICO LENDING 1, LLC'S REPLY TO LIMITED
OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO MOTION BY DEBTOR TO SELL CERTAIN ASSETS FREE AND
CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES AND OTHER INTERESTS**

Renwood Andronico Lending 1, LLC ("Renwood") files this Reply to the Limited

Objection (the "Objection") of Official Committee of Unsecured Creditors (the "Committee") to

1

Motion by Debtor to Sell Certain Assets Free and Clear of Liens, Claims and Encumbrances and Other Interests (the "Sale Motion") as follows:

**REPLY**

The Committee's Objection should be overruled and the Court should approve the proposed sale on the terms set forth in the Sale Motion and the Purchase Agreement.

A.   **Equitable Marshalling Does Not Apply**

Equitable marshalling -- the lynchpin of the Committee's objection -- fails for several reasons. First, as set forth in both *In re Brazier Forest Products, Inc.,* 921 F.2d 221 (9th Cir. 1990) and *Victor Gruen Assoc., Inc. v. Glass,* 338 F.2d 826, 829 (9th Cir. 1964), the cases relied on by the Committee for this argument, marshalling is an equitable remedy within the discretion of this Court that should only be used when it will not cause any harm to the party against whom it is being used. *Brazier, 921F.2d* at 223 ("marshalling may be invoked only . . . where its operation would work no inequity upon the debtor or certain third parties"); *Victor Gruen*, 338 F.2d at 829 (equity requires a creditor to marshal assets "if it can be done without prejudice to him or inequity to third parties, to look first to the fund which cannot be reached by the other creditor"). Traditionally, marshalling is employed when one creditor can fully satisfy its claim through other collateral whereas the junior creditor may only obtain a recovery from one source. That is not the case here.

The cases interpreting Cal. Civ. Code § 3433, which the Committee also relies on, are consistent on this point. The court in *Victor Gruen*, which arose under California law, held that "neither section 2899 nor 3433 . . . requires a creditor to marshal the debtors' assets unless this can be done without risk of loss to him." 338 F.2d at 829. Similarly, in *Shedoudy et al. v. Beverly Surgical Supply Co., et al.*, 100 Cal. App. 3d 730, 734 (Cal. Ct. App. 1980), the California Court of Appeals held that marshalling should never be applied when the result would be inequitable. Marshalling simply does not apply on the facts before this Court. The Committee seeks to construct a multi-million dollar surcharge to Renwood. This proposed

"equitable" act the Committee seeks would leave Renwood irretrievably damaged.

The Committee's proposal also violates the law of the case. The bid procedures, attached as Exhibit B to the Declaration of Doris A. Kaelin in Support of Motion by Debtor to Sell Certain Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests (Dkt. 178-4), and approved by this Court in the Amended Order Approving Bid Procedures and Related Matters re Sale of Certain Assets of the Debtor (Dkt. 183), specifically provide that Renwood has the sole discretion to determine whether its bid is on account of its prepetition facility or the DIP facility: "Purchaser shall have the right to make a credit bid for all of the collateral securing its claims to the full extent permitted by section 363(k) of the Bankruptcy Code and Purchaser shall have the sole discretion to determine whether its credit bid is on account of prepetition Debt or amounts owed under the DIP Facility." Bid Procedures, ¶ E. The Committee actively participated in the approved modification of the bid procedures, including the provisions regarding credit bidding. In fact, the Committee, Debtor and Renwood affirmatively agreed on the terms of the bid procedures. The amended bid procedures order, which was entered on September 20, 2011, is now a final order. Accordingly, the Committee cannot now challenge Renwood's ability to credit bid.

Application of the doctrine of equitable marshalling is not equitable in this instance. Marshalling would eliminate Renwood's ability to credit bid against all the collateral securing its various secured claims, including the millions of dollars of fresh cash advanced to fund the Debtor's operations. This Court should refuse to allow this misapplication of equitable marshalling.

**B.   The Proposed Sale is Not an Abuse of the Bankruptcy Process**

The Committee's assertion that approving the sale is an abuse of the bankruptcy process is equally without merit. In a novel interpretation of the Bankruptcy Code, the Committee suggests that unless a plan is confirmed any use of the bankruptcy process is an abuse of process. This is apparently true regardless of whether confirmation of a plan is realistic or practical under

3
74117-0002/LEGAL21916640.1

Case: 11-48963   Doc# 286   Filed: 10/12/11   Entered: 10/12/11 11:24:43   Page 3 of 7

the circumstances.  The Committee's position is a fabrication.  Similar sales are approved on a routine basis by bankruptcy courts in this district and around the country.  If every chapter 11 case required a plan, courts would be forced to shutter viable businesses across the country.

The Committee ignores the substantial benefits to all constituencies from the proposed sale.

- Over 460 employees will retain their jobs and have received payment of wages owed to them on the petition date and all wages owed during this bankruptcy case.  These employees have received healthcare benefits and have been able to use their vacation and sick leave.
- Approximately 110 trade creditors will receive payment from the estate on account of goods delivered to the estate in the 20-days prior to the petition date.  The estimated amount of these claims is $2.3 million, which represents full payment of approximately 24% of total unsecured debt.
- Parties to executory contracts and unexpired leases to be assumed will receive payment of all outstanding amounts under such agreements as part of the assumption and assignment process.
- Trade creditors have had a renewed opportunity to do business with a healthy customer.  This will also preserve additional jobs.
- The vast majority, if not all, of the administrative expense claims are in fact being paid by Renwood either through the DIP financing, use of cash collateral or under the Purchase Agreement.

In addition to the millions of dollars advanced under the DIP facility, Renwood is in discussions with the unions representing Debtor's employees with the likely outcome that Renwood will provide health and welfare benefits to retained employees for November and December, thus eliminating any administrative expense claim that might be asserted by the Pension Fund against the estate.  Moreover, resolution of those issues would also very likely

4

74117-0002/LEGAL21916640.1

Case: 11-48963   Doc# 286   Filed: 10/12/11   Entered: 10/12/11 11:24:43   Page 4 of 7

satisfy any alleged administrative expense claim arising for withdrawal liability from the Debtor's withdrawal from the pension plan.  The Committee knows this.

Finally, the Committee's assertion that confirmation standards should be applied in the sale context is wrong.  It ignores the provisions of the Bankruptcy Code and the guidelines adopted by this District.   Section 1129 is simply not applicable to the approval of sales under section 363.  While asset sales early in the case are not a goal of bankruptcy cases, they are a practical reality.  This district addressed this reality through its "Guidelines for Early Disposition of Assets in Chapter 11 Cases, Prepackaged Plans, the Sale of Substantially All Assets Under §363."  These guidelines require all creditors to be provided with extensive information regarding the proposed sale, the magnitude of claims, the impact of the sale on the estate and alternatives to the sale.  The Debtor has complied with those Guidelines.  In fact, the notice sent by the Debtor expressly informed creditors that a distribution was unlikely.  *See* Notice of Hearing on Proposed Sale of Certain Assets of the Debtor Free and Clear of Liens, Claims, Encumbrances and Other Interests, Establishment of Sale Overbid Procedures and Opportunity for Overbid at Auction ¶ 48 ("The Debtor does not contemplate funds will be available from the Sale to satisfy any other claims of creditors.") (Dkt. 185).  Despite this fact, not one individual creditor has opposed the proposed sale.

**C.	The Disposition of the Avoidance Actions is Proper**

The Committee's final arguments are that Renwood should not be able to determine in its sole discretion those avoidance actions that the estate cannot pursue without active participation by an estate representative and that the release of claims against Renwood and its affiliates is inappropriate.  The arguments both mischaracterize the transaction and are wrong on the law.

As support for the first argument, the Committee relies on cases that provide the Chapter 5 actions cannot be sold or assigned by the estate to third parties.  That is not what happens under the Purchase Agreement.  Rather, Renwood has the right to designate suppliers or third parties against whom avoidance actions cannot be brought.  These actions are not being assigned to

| | |
|---|---|
| 1 | Renwood – Renwood has no intention of pursuing such actions.  Rather as consideration for the |
| 2 | purchase and the substantial benefits being provided to the estate, the Debtor and the estate are |
| 3 | agreeing to forego such actions so that the business relationships of the newly purchased and |
| 4 | recapitalized Andronico's Markets are not damaged.  This is a wholly appropriate bargained for |
| 5 | provision in the Purchase Agreement.  Further, in light of the magnitude of the 503(b)(9) claims |
| 6 | that are being paid in full, it is not clear that such actions would yield much value after costs and |
| 7 | attorney fees.  The Committee does not appear to ascribe any value to them.  Accordingly, the |
| 8 | avoidance agreement covenant is an appropriate exercise of the Debtor's business judgment and |
| 9 | should be approved. |
| 10 | The Committee's final argument is that the release by the estate of all claims against |
| 11 | Renwood and its affiliates in the Purchase Agreement are inappropriate.  The Committee fails to |
| 12 | note that all such claims have already been released by the Debtor in the Final Order |
| 13 | (1) Authorizing Post-Petition Financing; (2) Authorizing Use of Cash Collateral; (3) Granting |
| 14 | Adequate Protection; (4) Modifying Automatic Stay; and (5) Granting Related Relief.  (Dkt. |
| 15 | 128); *See* ¶ E(f).  The release was subject to the right of the Committee to commence an action |
| 16 | within a prescribed period, which the parties agreed expired on October 10, 2011.  Although the |
| 17 | Committee commenced an adversary proceeding to challenge Renwood's alleged prepetition |
| 18 | security interest in certain assets, that adversary proceeding did not assert any other claims |
| 19 | against Renwood.  Accordingly, such claims have been already been released.  Even if the claims |
| 20 | were not already released, they were bargained for exchange as part of the purchase from the |
| 21 | outset. |
| 22 | / |
| 23 | / |
| 24 | / |
| 25 | |
| 26 | |

74117-0002/LEGAL21916640.1

# CONCLUSION

For the reasons above, Renwood requests that the Objection be overruled in its entirety and that this Court enter an order approving the Sale Motion.

Dated: October 12, 2011　　　　　　　　**PERKINS COIE LLP**

By: /s/ Jeanette L. Thomas
　　　Jeanette L. Thomas, Esq.

Counsel for Renwood Andronico Lending 1, LLC

74117-0002/LEGAL21916640.1