JOHN WALSHE MURRAY (074823)
DORIS A. KAELIN (162069)
THOMAS T. HWANG (218678)
MURRAY & MURRAY
A Professional Corporation
19400 Stevens Creek Blvd., Suite 200
Cupertino, CA 95014-2548
Telephone: (650) 852-9000; (408) 907-9200
Facsimile: (650) 852-9244
Email: jwmurray@murraylaw.com
Email: dkaelin@murraylaw.com
Email: thwang@murraylaw.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

In re:

**ANDRONICO'S MARKETS, INC.,**
A California Corporation, aka
Andronico's Community Markets,

Debtor.

1200 Irving Street
San Francisco, CA 94122

Employer Tax I.D. No.: 94-1307395

Case No. 11-48963-EDJ-11

Chapter 11

Date: October 13, 2011
Time: 9:00 a.m.
Place: United States Bankruptcy Court
1300 Clay Street, Courtroom 215
Oakland, CA 94612
Judge: Honorable Edward D. Jellen

**SECOND DECLARATION OF WILLIAM R. BRINKMAN IN SUPPORT OF
MOTION BY DEBTOR TO SELL CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS**

I, William R. Brinkman, declare:

1. I am a principal of Bailey, Elizondo & Brinkman LLC ("BEBLLC"), the financial advisor for Andronico's Markets, Inc., the debtor and debtor in possession in the above-captioned bankruptcy case ("Andronico's," the "Company" or the "Debtor"), and am authorized to make this declaration on behalf of the Debtor. I have personal knowledge of the matters stated herein except as to those matters stated on information and belief, and as to those matters I am informed and believe them to be true. If called as a witness, I could and would testify competently as to those

Case: 11-48963   Doc# 290   Filed: 10/12/11   Entered: 10/12/11 21:12:05   Page 1 of 4

RAF
R:\Andronico's\Pld\Sale\Supp\2ndDecWRBv3.docx

1   DECLARATION OF WILLIAM R. BRINKMAN IN SUPPORT OF MOTION
BY DEBTOR TO SELL CERTAIN ASSETS FREE AND CLEAR . . .

matters.

2. I submit this Declaration in further support of the MOTION BY DEBTOR TO SELL CERTAIN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS (the "Sale Motion") previously filed with the Court.

**Supplement to Post-Petition Marketing Efforts**

3. My previous declaration filed in support of the Sale Motion set forth efforts to market the Purchased Assets both prior to the filing of the bankruptcy case and during the Chapter 11 case. This supplement is provided to describe efforts undertaken since on or about September 20, 2011, the date of the first declaration.

4. During the post-petition period, BEBLLC updated and refreshed the sale marketing materials, updated the online data room, and created a proposed transaction summary, a "teaser", that was emailed during the week of September 5, 2011 to approximately 1,500 potential investors, capital sources, and advisors, who are BEBLLC contacts from its proprietary database. The 46 prospective candidates, excluding those who asked to be removed from the list, were also emailed the teaser. A supplemental "teaser" based on the final terms of the Purchase Agreement and the Bid Procedures Order was emailed during the week of September 19, 2011 to the same potential investors as the original "teaser" except for those candidates who indicated that they were not interested in this transaction or were duplicative within potential targets. BEBLLC contacted each of the 46 prospective candidates who were initially targeted, excluding the ones who indicated that they were not interested in a transaction involving Andronico's, and BEBLLC responded to approximately 30 inbound inquiries from potential bidders as a result of the supplemental teaser email. Of the original 46 targets, three of them reviewed the updated materials and engaged in some level of due diligence before ultimately deciding to not bid. In addition, six newly-identified potential bidders signed non-disclosure agreements and performed due diligence. Two of the six indicated that they were interested in acquiring one store—the San Francisco location, and the remaining four potential bidders were interested in potentially acquiring substantially all of the Debtor's assets. Ultimately, none of the six newly-identified candidates submitted a bid to acquire any of Andronico's assets. Many of the potential bidders that BEBLLC communicated with

Case: 11-48963   Doc# 290   Filed: 10/12/11   Entered: 10/12/11 21:12:05   Page 2 of 4

2   DECLARATION OF WILLIAM R. BRINKMAN IN SUPPORT OF MOTION BY DEBTOR TO SELL CERTAIN ASSETS FREE AND CLEAR . . .

expressed the view that the $16 million stalking horse bid appeared to be too expensive and that the stalking horse bidder would likely increase its bid, up to the amount of secured debt owned by the stalking horse bidder, if a competing bid was entered.

5. I believe that the marketing process was fair and efficient, and achieved its goal of producing the highest and best stalking horse bidder, as well as fostering significant interest among potential competing bidders in the ultimate Court-conducted auction at the Sale Hearing.

**Response to Limited Objection by Creditors' Committee and Declaration in Support Thereof**

6. Since February 2011, BEBLLC has been marketing Andronico's for sale both as a going-concern entity and for the sale of Andronico's individual stores. Several potential buyers, including a large retail chain, evaluated both the Shattuck Avenue location and the University Avenue location and indicated to me that the leasehold interest in both stores was likely worthless as-is. That is, the lease terms would have to be extended, in one case the request was the addition of seven (7) five-year options for a total of 35 years, in order for the potential buyers to actually assign any leasehold interest value to the store location. Further, the University Avenue location lost money on a four-wall operating basis—that is before any allocation of overhead—during fiscal years 2010 and 2011, when the Debtor estimates that the store-level loss will be in excess of $550,000.

7. During negotiations of a letter of intent ("LOI") with one potential acquirer, which is a competitor to Andronico's, that potential buyer stated to me that the University Avenue leasehold interest does not have any value, and the potential buyer included the University Avenue store in its initial LOI as an incentive for Andronico's to select its LOI. Ultimately, after further due diligence this potential buyer amended its LOI to exclude the University Avenue location, and the potential buyer indicated to me that store location was undesirable and the amount of capital expenditure required was likely cost prohibitive.

8. The Debtor's real estate broker attempted for over 4 months to sublease or otherwise strike an agreement whereby another retailer would take-over the University location for Andronico's. While there was considerable interest in evaluating a potential transaction with Andronico's, no suitor was willing to sub-lease the store location even after Andronico's indicated that it was willing to continue to pay some portion of the University Avenue rent as an inducement

for the potential sub-lessee. I have personally discussed the marketing efforts with the real estate broker and have reviewed her matrix that details discussions with approximately 23 potential sub-lessee's, and my conclusion is that the University Avenue leasehold interest does not have any real market value.

9. With regard to the declaration by Matthew D. Covington filed in support of the Committee's limited objection [docket no. 284-1] as it relates the conclusion that an LOI, which is not a binding contract, received by the Company indicated that value ranges "of the Purchased Assets other than Unencumbered Assets exceeds the DIP Balance by approximately $4 million to $9 million, this conclusion fails to consider the practical implications that the required conditions precedent rendered the LOIs highly improbable. Specifically, the potential buyer required that the San Francisco location lease terms be materially modified—with significant rent decreases and extensions of term. The San Francisco landlord has clearly indicated to the Debtor that it is not willing to modify the current lease if such modifications negatively impact the cash flow and ultimate value of the lease, and, further, the landlord has denied the stalking horse bidder any changes to the San Francisco lease.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this Declaration is executed on October 12, 2011.

                                          */s/ William R. Brinkman*
                                          William R. Brinkman